AO 93 (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

### for the

### District of Minnesota

| | |
|---|---|
| In the Matter of the Search of the residence of ▇▇▇▇ located at ▇▇▇▇ Minneapolis, Minnesota 55408, which is a two-bedroom residence that is on the second floor of a two story duplex.  There is a front and rear porch. | CASE NO. MJ-389 SEN |

## SEARCH AND SEIZURE WARRANT

TO:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the State and District of Minnesota:

▇▇▇▇▇▇ Minneapolis, Minnesota 55408, which is a two-bedroom residence that is on the second floor of a two story duplex.  There is a front and rear porch.

The person or property to be searched, described above, is believed to conceal:  See attached list of items to be seized.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before _____October 7, 2010_____.

   X   in the daytime 6:00 a.m. to 10 p.m.            __   at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge SUSAN RICHARD NELSON.

   __   I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

            __   for ____ days *(not to exceed 30)*.
            __   until, the facts justifying, the later specific date of __.

_September 23, 2010 3:30pm_          at          Minneapolis, MN _____
Date and Time Issued                                      City and State

_Susan Richard Nel_
SUSAN RICHARD NELSON, U.S. Magistrate Judge



~~SEALED~~ EXHIBIT 2

## ATTACHMENT A

### DESCRIPTION OF PREMISES TO BE SEARCHED

**Residence of** ████████ ███████████████████, Minneapolis, Minnesota 55408, which is a two-bedroom residence that is on the second floor of a two-story duplex. There is a front and rear porch.

## ATTACHMENT B

## LIST OF ITEMS TO BE SEIZED

### RESIDENCE OF ████████

Evidence concerning the violation of: (1) 18 U.S.C. § 2339B: Providing, attempting and conspiring to provide material support to designated foreign terrorist organizations, as follows:

(1)   Documents, files, books, photographs, videos, souvenirs, war relics, notebooks, address books, diaries, journals, maps or other evidence, including evidence in electronic form, related to:

   a)   ████████ travel to and from, and presence and activities in Minnesota, Palestine, and other countries involved in ████████ transit to and from Palestine, including the identities and locations of ████ facilitators, co-conspirators and ████████ travel history and travel plans;

   b)   ████████ ability to pay for her own travel from the United States to Palestine, and travel within the United States from 2000 until present, including all materials related to ████████ personal finances and finances of the Anti-War Committee ("AWC") Freedom Road Socialist Organization ("FRSO") and the PFLP;

   c)   ████████ potential co-conspirators, including any address books, lists, notes, photographs, videos, or letters of ████ personal contacts in the United States and abroad;

   d)   the recruitment, indoctrination, and facilitation of other individuals in the United States to join FRSO or the AWC, including materials related to the identity and location of recruiters, facilitators, and recruits, the means by which the recruits were recruited to join FRSO or the AWC, the means by which the recruitment was financed and arranged;

   e)   the recruitment, indoctrination, and facilitation of other individuals in the United States to travel to Palestine or any other foreign location in support of FTOs including, but not limited to FARC and PFLP, including materials related to the identity and location of recruiters, facilitators, and recruits of these FTOs, the means by which individuals were recruited to travel to Palestine and other foreign locations in support of FTOs, and the means by which the recruitment was financed and arranged;

   f)   FARC, PFLP and other FTOs which the FRSO has supported, attempted to support or conspired to support;

   h)   ████ use of the email addresses: ███████████████████ telephone number (612) ████ or any other telephone numbers, and Facebook, MySpace, or other social networking websites.

(2)     Computer equipment, electronic storage devices, and cellular telephones belonging to ████
        and their contents, including files, telephone numbers, photographs and videos, related to the
        evidentiary items listed in paragraph 1 above, pursuant to the procedures set forth in the
        accompanying affidavit.

AO 106 (Rev. 4/10) Application for a Seizure Warrant

# UNITED STATES DISTRICT COURT

### for the

### District of Minnesota

In the Matter of the Search of the residence of ▮▮▮▮▮, located at )
▮▮▮▮▮▮▮▮▮▮, Minneapolis, Minnesota )
55408,  which is a two-bedroom residence that is on the second floor )
of a two story duplex.  There is a front and rear porch. )
)
)

CASE NO. MJ − 389 SRN

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property

▮▮▮▮▮▮▮▮▮▮▮▮▮ Minneapolis, Minnesota 55408, which is a two-bedroom residence that is on the second floor of a two story duplex.  There is a front and rear porch,

located in the State and District of Minnesota, there is now concealed:

See attached list of items to be seized

The basis for the search under Fed. R. Crim. P. 41(c) is:

- X  evidence of a crime;
- X  contraband, fruits of crime, or other items illegally possessed;
- X  property designed for use, intended for use, or used in committing a crime;
- __  a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:  Title 18, United States Code, Section 2339B.

The application is based on these facts:

See attached Affidavit.

- X  Continued on attached sheet.
- __  Delayed notice of_ days (give exact ending date if more than 30 days:_) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Signature of Applicant
Special Agent John Thomas , FBI

Sworn to before me, and subscribed in my presence

_____
Date and Time Issued

September 23, 2010  3:30 pm

SUSAN RICHARD NELSON, U.S. Magistrate Judge

at      Minneapolis, MN
        _____
        City and State

## ATTACHMENT A

## DESCRIPTION OF PREMISES TO BE SEARCHED

**Residence of** ███████ ██████████████████ Minneapolis, Minnesota 55408, which is a two-bedroom residence that is on the second floor of a two-story duplex. There is a front and rear porch.

## ATTACHMENT B

## LIST OF ITEMS TO BE SEIZED

### RESIDENCE OF ███████

Evidence concerning the violation of: (1) 18 U.S.C. § 2339B: Providing, attempting and conspiring to provide material support to designated foreign terrorist organizations, as follows:

(1)   Documents, files, books, photographs, videos, souvenirs, war relics, notebooks, address books, diaries, journals, maps or other evidence, including evidence in electronic form, related to:

a)   ███████ travel to and from, and presence and activities in Minnesota, Palestine, and other countries involved in ███████ transit to and from Palestine, including the identities and locations of ███████ facilitators, co-conspirators and ███████ travel history and travel plans;

b)   ███████ ability to pay for her own travel from the United States to Palestine, and travel within the United States from 2000 until present, including all materials related to ███████ personal finances and finances of the Anti-War Committee ("AWC") Freedom Road Socialist Organization ("FRSO") and the PFLP;

c)   ███████ potential co-conspirators, including any address books, lists, notes, photographs, videos, or letters of ███████ personal contacts in the United States and abroad;

d)   the recruitment, indoctrination, and facilitation of other individuals in the United States to join FRSO or the AWC, including materials related to the identity and location of recruiters, facilitators, and recruits, the means by which the recruits were recruited to join FRSO or the AWC, the means by which the recruitment was financed and arranged;

e)   the recruitment, indoctrination, and facilitation of other individuals in the United States to travel to Palestine or any other foreign location in support of FTOs including, but not limited to FARC and PFLP, including materials related to the identity and location of recruiters, facilitators, and recruits of these FTOs, the means by which individuals were recruited to travel to Palestine and other foreign locations in support of FTOs, and the means by which the recruitment was financed and arranged;

f)   FARC, PFLP and other FTOs which the FRSO has supported, attempted to support or conspired to support;

h)   ███████ use of the email addresses: ███████████████████████ telephone number (612)███████, or any other telephone numbers, and Facebook, MySpace, or other social networking websites.

(2)     Computer equipment, electronic storage devices, and cellular telephones belonging to ███
        and their contents, including files, telephone numbers, photographs and videos, related to the
        evidentiary items listed in paragraph 1 above, pursuant to the procedures set forth in the
        accompanying affidavit.

## SEARCH WARRANT ADDENDUM

1.     In conducting the search authorized by this warrant, the government shall make reasonable efforts to utilize computer search methodology that avoids searching files, documents or other electronically stored information which is not identified in the warrant.

2.     If electronically stored data or documents have been identified and seized by the government pursuant to this warrant, the government may retain the original hard drive or other data storage mechanism. The person from whom the data storage device has been seized may request that the government provide him or her with electronic copies of the electronically stored data or documents by making a written request to the United States Attorney's Office, identifying with specificity the files, data, or software sought to be copied. The government must respond to all such requests within a reasonable amount of time, and must provide a copy of the electronically stored data or documents requested unless the copies requested constitute contraband, instrumentalities, or property subject to forfeiture.

3.     Nothing in this warrant shall limit or prevent the government from seizing the computer as contraband or an instrumentality of a crime or commencing forfeiture proceedings against the computer and/or the data contained therein. Nothing in this warrant shall limit or prevent the owner of the computer from (a) filing a motion with the Court pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure for the Return of Property or (b) making a request of the government to return certain specified files, data, software or hardware.

4.     The government shall establish a search methodology governing the review of seized data to ensure that no attorney-client privileged communications will be inadvertently reviewed by the prosecution team.  In the event that documents or other records seized pursuant to this warrant are identified by the government as possibly containing attorney-client privileged communications, an Assistant United States Attorney, who is not a member of the prosecution team and who is not participating in the search, shall act as a "taint team" to set up a "Chinese wall" between the evidence and the prosecution team that will prevent any privileged material from getting through.

AO 93 (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

### for the

### District of Minnesota

| | |
|---|---|
| In the Matter of the Search of the residence of ▮▮▮▮▮▮ and ▮▮▮▮▮, located at ▮▮▮▮▮▮▮, Chicago, Illinois 60647, a two-story single family home with white painted siding. The numbers ▮▮ are affixed to the house near the front door on the side facing ▮▮▮▮▮▮▮. | ) ) ) ) ) ) |

CASE NO.  10-mj-389 SER

## SEARCH AND SEIZURE WARRANT

TO:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the State and District of Minnesota:

▮▮▮▮▮▮▮▮, Chicago, Illinois 60647, a two-story single family home with white painted siding. The numbers ▮ are affixed to the house near the front door on the side facing ▮▮▮▮▮▮▮

The person or property to be searched, described above, is believed to conceal: See attached list of items to be seized.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before _____October 7, 2010_____ .

   X   in the daytime 6:00 a.m. to 10 p.m.                 ___   at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge SUSAN RICHARD NELSON.

___ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

                 ___   for ____ days *(not to exceed 30)*.
                 ___   until, the facts justifying, the later specific date of __.

*September 23, 2010   2:30pm*          at          Minneapolis, MN
Date and Time Issued                                     City and State

*Susan Richard Nelson*
SUSAN RICHARD NELSON, U.S. Magistrate Judge

## ATTACHMENT A

## DESCRIPTION OF PREMISES TO BE SEARCHED

**Residence of** ███████████ **and** ████████. ████████████████, Chicago, Illinois 60647, a two-story single family home with white painted siding. The numbers ████ are affixed to the house near the front door on the side facing ██████████████.

**ATTACHMENT B**

**LIST OF ITEMS TO BE SEIZED**

**RESIDENCE AND ATTACHED GARAGE OF** ███████████ **AND** ██

██████████

Evidence concerning the violation of 18 U.S.C. § 2339B, providing, attempting and conspiring to provide material support to designated foreign terrorist organizations; as follows:

(1)     Documents, files, books, photographs, videos, souvenirs, war relics, notebooks, address books, diaries, journals, maps or other evidence, including evidence in electronic form, related to:

      a)      any FRSO member's travel to and from Palestine, or Colombia and other countries involved in the FRSO member's transit to and from Palestine or Colombia, including the identities and locations of the member's facilitators, co-conspirators and travel history and travel plans;

      b)      any bracelet, t-shirts, necklaces or other items that reference the PFLP or FARC;

      c)      ██████ and ████████ potential co-conspirators, including any address books, lists, notes, photographs, videos, or letters of ██████ and ███████ personal contacts in the United States and abroad;

      d)      the recruitment, indoctrination, and facilitation of other individuals in the United States to join FRSO, including materials related to the identity and location of recruiters, facilitators, and recruits, the means by which the recruits were recruited to join FRSO the means by which the recruitment was financed and arranged;

      e)      the recruitment, indoctrination, and facilitation of other individuals in the United States to travel to Palestine or any other foreign location in support of FTOs including, but not limited to FARC and PFLP, including materials related to the identity and location of recruiters, facilitators, and recruits of these FTOs, the means by which individuals were recruited to travel to Palestine and other foreign locations in support of FTOs, and the means by which the recruitment was financed and arranged;

      f)      FARC, PFLP and other FTOs which the FRSO has supported, attempted to support or conspired to support;

      g)      Bank records related to ██████ and ████ or ████████████

(2)     Computer equipment, electronic storage devices, and cellular telephones belonging to ███████████████ and their contents, including files, telephone numbers, photographs and videos, related to the evidentiary items listed in paragraph 1 above, pursuant to the procedures set forth in the accompanying affidavit.

AO 106 (Rev. 4/10) Application for a Seizure Warrant

# UNITED STATES DISTRICT COURT

### for the

### District of Minnesota

| | |
|---|---|
| In the Matter of the Search of the residence of ▮▮▮▮ and ▮▮▮▮ located at ▮▮▮▮, Chicago, Illinois, a two-story single family home with white painted siding. The numbers ▮▮ are affixed to the house near the front door on the side facing ▮▮▮ | ) ) ) ) ) ) |

CASE NO.  10-mj-389 SRN

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property

▮▮▮▮▮, Chicago, Illinois 60647, a two-story single family home with white painted siding. The numbers ▮▮ are affixed to the house near the front door on the side facing ▮▮▮▮▮

located in the State and District of Minnesota, there is now concealed:

See attached list of items to be seized

The basis for the search under Fed. R. Crim. P. 41(c) is:

    X    evidence of a crime;
    X    contraband, fruits of crime, or other items illegally possessed;
    X    property designed for use, intended for use, or used in committing a crime;
    __    a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:  Title 18, United States Code, Section 2339B.

The application is based on these facts:

See attached Affidavit.

    X    Continued on attached sheet.
    __    Delayed notice of_ days (give exact ending date if more than 30 days:_) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Signature of Applicant*
Special Agent John Thomas , FBI

Sworn to before me, and subscribed in my presence

*September 23, 2010  3:30pm*
Date and Time Issued

*Susan Richard Nel*
SUSAN RICHARD NELSON, U.S. Magistrate Judge

at    Minneapolis, MN
    City and State

## ATTACHMENT A

## DESCRIPTION OF PREMISES TO BE SEARCHED

**Residence of** ███████████ **and** █████████, ███████████████ Chicago, Illinois 60647, a two-story single family home with white painted siding. The numbers ████ are affixed to the house near the front door on the side facing ██████████████.

## ATTACHMENT B

### LIST OF ITEMS TO BE SEIZED

**RESIDENCE AND ATTACHED GARAGE OF** ███████████████ **AND** ██
███

Evidence concerning the violation of 18 U.S.C. § 2339B, providing, attempting and conspiring to provide material support to designated foreign terrorist organizations; as follows:

(1)   Documents, files, books, photographs, videos, souvenirs, war relics, notebooks, address books, diaries, journals, maps or other evidence, including evidence in electronic form, related to:

   a)   any FRSO member's travel to and from Palestine, or Colombia and other countries involved in the FRSO member's transit to and from Palestine or Colombia, including the identities and locations of the member's facilitators, co-conspirators and travel history and travel plans;

   b)   any bracelet, t-shirts, necklaces or other items that reference the PFLP or FARC;

   c)   ████████ and ████████'s potential co-conspirators, including any address books, lists, notes, photographs, videos, or letters of ███████ and ████████ personal contacts in the United States and abroad;

   d)   the recruitment, indoctrination, and facilitation of other individuals in the United States to join FRSO, including materials related to the identity and location of recruiters, facilitators, and recruits, the means by which the recruits were recruited to join FRSO the means by which the recruitment was financed and arranged;

   e)   the recruitment, indoctrination, and facilitation of other individuals in the United States to travel to Palestine or any other foreign location in support of FTOs including, but not limited to FARC and PFLP, including materials related to the identity and location of recruiters, facilitators, and recruits of these FTOs, the means by which individuals were recruited to travel to Palestine and other foreign locations in support of FTOs, and the means by which the recruitment was financed and arranged;

   f)   FARC, PFLP and other FTOs which the FRSO has supported, attempted to support or conspired to support;

   g)   Bank records related to ████████ and ████████ or
   ███████████████

(2)   Computer equipment, electronic storage devices, and cellular telephones belonging to ████████████████ and their contents, including files, telephone numbers, photographs and videos, related to the evidentiary items listed in paragraph 1 above, pursuant to the procedures set forth in the accompanying affidavit.

## SEARCH WARRANT ADDENDUM

1.      In conducting the search authorized by this warrant, the government shall make reasonable efforts to utilize computer search methodology that avoids searching files, documents or other electronically stored information which is not identified in the warrant.

2.      If electronically stored data or documents have been identified and seized by the government pursuant to this warrant, the government may retain the original hard drive or other data storage mechanism. The person from whom the data storage device has been seized may request that the government provide him or her with electronic copies of the electronically stored data or documents by making a written request to the United States Attorney's Office, identifying with specificity the files, data, or software sought to be copied. The government must respond to all such requests within a reasonable amount of time, and must provide a copy of the electronically stored data or documents requested unless the copies requested constitute contraband, instrumentalities, or property subject to forfeiture.

3.      Nothing in this warrant shall limit or prevent the government from seizing the computer as contraband or an instrumentality of a crime or commencing forfeiture proceedings against the computer and/or the data contained therein. Nothing in this warrant shall limit or prevent the owner of the computer from (a) filing a motion with the Court pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure for the Return of Property or (b) making a request of the government to return certain specified files, data, software or hardware.

4.      The government shall establish a search methodology governing the review of seized data to ensure that no attorney-client privileged communications will be inadvertently reviewed by the prosecution team. In the event that documents or other records seized pursuant to this warrant are identified by the government as possibly containing attorney-client privileged communications, an Assistant United States Attorney, who is not a member of the prosecution team and who is not participating in the search, shall act as a "taint team" to set up a "Chinese wall" between the evidence and the prosecution team that will prevent any privileged material from getting through.

AO 93 (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

District of Minnesota

| | |
|---|---|
| In the Matter of the Search of the residence of ▮▮▮▮▮ located at ▮▮▮▮▮▮ Minneapolis, Minnesota 55407, which is a two-story single family residence with a front porch, detached garage, and fenced yard. | CASE NO. <br> 10-mj-389 SRN |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the State and District of Minnesota:

▮▮▮▮▮▮▮ Minneapolis, Minnesota 55407, which is a two-story single family residence with a front porch, detached garage, and fenced yard.

The person or property to be searched, described above, is believed to conceal:  See attached list of items to be seized.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before _____October 7, 2010_____ .

   X   in the daytime 6:00 a.m. to 10 p.m.                    __   at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge SUSAN RICHARD NELSON.

   __   I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

            __      for ____ days *(not to exceed 30).*
            __      until, the facts justifying, the later specific date of ___.

September 23, 2010  3:30pm ,          at          Minneapolis, MN
Date and Time Issued                                   City and State

*Susan Richard Nel*
SUSAN RICHARD NELSON, U.S. Magistrate Judge

## ATTACHMENT A

## DESCRIPTION OF PREMISES TO BE SEARCHED

**Residence of** ███████████████████████, Minneapolis, Minnesota 55407, which is
a two-story single-family residence with a front porch, detached garage, and fenced yard.

## ATTACHMENT B

## LIST OF ITEMS TO BE SEIZED

## RESIDENCE AND DETACHED GARAGE OF ██████████

Evidence concerning the violation of 18 U.S.C. § 2339B: Providing, attempting and conspiring to provide material support to designated foreign terrorist organizations, as follows:

(1)    Documents, files, books, photographs, videos, souvenirs, war relics, notebooks, address books, diaries, journals, maps or other evidence, including evidence in electronic form, related to:

a)    ██████ travel to and from, and presence and activities in Minnesota, Palestine, Colombia, and other countries involved in ████ transit to and from Colombia, including the identities and locations of ████ facilitators, co-conspirators and ████ travel history and travel plans;

b)    ████ ability to pay for her own travel from the United States to Palestine, Colombia and travel within the United States from 2000 until present, including all materials related to ████ personal finances and finances of the Anti-War Committee ("AWC") and Freedom Road Socialist Organization ("FRSO");

c)    ████ potential co-conspirators, including any address books, lists, notes, photographs, videos, or letters of ████ personal contacts in the United States and abroad;

d)    the recruitment, indoctrination, and facilitation of other individuals in the United States to join FRSO or AWC, including materials related to the identity and location of recruiters, facilitators, and recruits, the means by which the recruits were recruited to join FRSO, or AWC, and the means by which the recruitment was financed and arranged;

e)    the recruitment, indoctrination, and facilitation of other individuals in the United States to travel to Colombia, Palestine or any other foreign location in support of FTOs including, but not limited to the FARC and PFLP, including materials related to the identity and location of recruiters, facilitators, and recruits of these FTOs, the means by which individuals were recruited to travel to Colombia, Palestine and other foreign locations in support of FTOs, and the means by which the recruitment was financed and arranged;

f)    FARC, PFLP and other FTOs which the FRSO has supported, attempted to support or conspired to support;

g)    ▮▮▮ use of the email addresses ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and telephone number (612) ▮▮▮▮▮ or any other telephone numbers, and Facebook, MySpace, or other social networking websites.

(2)   Computer equipment, electronic storage devices, and cellular telephones belonging to ▮▮▮ and their contents, including files, telephone numbers, photographs and videos, related to the evidentiary items listed in paragraph 1 above, pursuant to the procedures set forth in the accompanying affidavit.

AO 106 (Rev. 4/10) Application for a Seizure Warrant

# UNITED STATES DISTRICT COURT

*FILED UNDER SEAL*

for the

District of Minnesota

| | |
|---|---|
| In the Matter of the Search of the residence of ███████ located at ███████████, Minneapolis, Minnesota 55407, which is a two-story single family residence with a front porch, detached garage, and fenced yard | ) ) ) ) ) ) |

CASE NO.  10-mj-389 SRN

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property

███████, Minneapolis, Minnesota 55407, which is a two-story single family residence with a front porch, detached garage, and fenced yard,

located in the State and District of Minnesota, there is now concealed:

See attached list of items to be seized

The basis for the search under Fed. R. Crim. P. 41(c) is:

- X    evidence of a crime;
- X    contraband, fruits of crime, or other items illegally possessed;
- X    property designed for use, intended for use, or used in committing a crime;
- __    a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:  Title 18, United States Code, Section 2339B.

The application is based on these facts:

See attached Affidavit.

- X    Continued on attached sheet.
- ____  Delayed notice of _ days (give exact ending date if more than 30 days:_) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Signature of Applicant*
Special Agent John Thomas , FBI

Sworn to before me, and subscribed in my presence

September 23, 2010   3:30pm
Date and Time Issued

at

Minneapolis, MN
City and State

SUSAN RICHARD NELSON, U.S. Magistrate Judge

SEP 29 2010

FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## ATTACHMENT A

## DESCRIPTION OF PREMISES TO BE SEARCHED

**Residence of** ███████████████████████████ Minneapolis, Minnesota 55407, which is
a two-story single-family residence with a front porch, detached garage, and fenced yard.

## ATTACHMENT B

### LIST OF ITEMS TO BE SEIZED

**RESIDENCE AND DETACHED GARAGE OF** ███████████

Evidence concerning the violation of 18 U.S.C. § 2339B: Providing, attempting and conspiring to provide material support to designated foreign terrorist organizations, as follows:

(1)  Documents, files, books, photographs, videos, souvenirs, war relics, notebooks, address books, diaries, journals, maps or other evidence, including evidence in electronic form, related to:

     a)  ████ travel to and from, and presence and activities in Minnesota, Palestine, Colombia, and other countries involved in ████ transit to and from Colombia, including the identities and locations of ████ facilitators, co-conspirators and ████ travel history and travel plans;

     b)  ████ ability to pay for her own travel from the United States to Palestine, Colombia and travel within the United States from 2000 until present, including all materials related to ████ personal finances and finances of the Anti-War Committee ("AWC") and Freedom Road Socialist Organization ("FRSO");

     c)  ████ potential co-conspirators, including any address books, lists, notes, photographs, videos, or letters of ████ personal contacts in the United States and abroad;

     d)  the recruitment, indoctrination, and facilitation of other individuals in the United States to join FRSO or AWC, including materials related to the identity and location of recruiters, facilitators, and recruits, the means by which the recruits were recruited to join FRSO, or AWC, and the means by which the recruitment was financed and arranged;

     e)  the recruitment, indoctrination, and facilitation of other individuals in the United States to travel to Colombia, Palestine or any other foreign location in support of FTOs including, but not limited to the FARC and PFLP, including materials related to the identity and location of recruiters, facilitators, and recruits of these FTOs, the means by which individuals were recruited to travel to Colombia, Palestine and other foreign locations in support of FTOs, and the means by which the recruitment was financed and arranged;

     f)  FARC, PFLP and other FTOs which the FRSO has supported, attempted to support or conspired to support;

g)        ███ use of the email addresses ███████████████ and ███████████ and telephone number (612) ███████ or any other telephone numbers, and Facebook, MySpace, or other social networking websites.

(2)    Computer equipment, electronic storage devices, and cellular telephones belonging to ███ and their contents, including files, telephone numbers, photographs and videos, related to the evidentiary items listed in paragraph 1 above, pursuant to the procedures set forth in the accompanying affidavit.

## SEARCH WARRANT ADDENDUM

1.      In conducting the search authorized by this warrant, the government shall make reasonable efforts to utilize computer search methodology that avoids searching files, documents or other electronically stored information which is not identified in the warrant.

2.      If electronically stored data or documents have been identified and seized by the government pursuant to this warrant, the government may retain the original hard drive or other data storage mechanism. The person from whom the data storage device has been seized may request that the government provide him or her with electronic copies of the electronically stored data or documents by making a written request to the United States Attorney's Office, identifying with specificity the files, data, or software sought to be copied. The government must respond to all such requests within a reasonable amount of time, and must provide a copy of the electronically stored data or documents requested unless the copies requested constitute contraband, instrumentalities, or property subject to forfeiture.

3.   .   Nothing in this warrant shall limit or prevent the government from seizing the computer as contraband or an instrumentality of a crime or commencing forfeiture proceedings against the computer and/or the data contained therein. Nothing in this warrant shall limit or prevent the owner of the computer from (a) filing a motion with the Court pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure for the Return of Property or (b) making a request of the government to return certain specified files, data, software or hardware.

4.      The government shall establish a search methodology governing the review of seized data to ensure that no attorney-client privileged communications will be inadvertently reviewed by the prosecution team. In the event that documents or other records seized pursuant to this warrant are identified by the government as possibly containing attorney-client privileged communications, an Assistant United States Attorney, who is not a member of the prosecution team and who is not participating in the search, shall act as a "taint team" to set up a "Chinese wall" between the evidence and the prosecution team that will prevent any privileged material from getting through.

AO 93 (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

District of Minnesota

| | |
|---|---|
| In the Matter of the Search of ▮▮▮▮▮▮▮ residence, located at ▮▮▮▮▮▮▮▮ Minneapolis, Minnesota 55403, which is a two-bedroom apartment on the second floor of a multi-unit apartment complex. | )<br>)<br>)<br>)<br>)<br>) |

CASE NO.  10-mj - 389 SRN

## SEARCH AND SEIZURE WARRANT

TO:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the State and District of Minnesota:

▮▮▮▮▮▮▮▮▮▮▮ Minneapolis, Minnesota 55403, which is a two-bedroom apartment on the second floor of a multi-unit apartment complex.

The person or property to be searched, described above, is believed to conceal:  See attached list of items to be seized.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before _____October 7, 2010_____.

   X   in the daytime 6:00 a.m. to 10 p.m.          __          at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge SUSAN RICHARD NELSON.

__   I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

                    __     for ____ days *(not to exceed 30)*.
                    __     until, the facts justifying, the later specific date of __.

September 23, 2010   3:30pm    at          Minneapolis, MN_____

Date and Time Issued                                City and State

SUSAN RICHARD NELSON, U.S. Magistrate Judge

## ATTACHMENT A

## DESCRIPTION OF PREMISES TO BE SEARCHED

**Residence of** ███████████████: ████████████████████, Minneapolis, Minnesota 55403, which is a two-bedroom apartment on the second floor of a multi-unit apartment complex.

## ATTACHMENT B

## LIST OF ITEMS TO BE SEIZED

### RESIDENCE OF ███████████

Evidence concerning the violation of: (1) 18 U.S.C. § 2339B: Providing, attempting and conspiring to provide material support to designated foreign terrorist organizations, as follows:

(1)   Documents, files, books, photographs, videos, souvenirs, war relics, notebooks, address books, diaries, journals, maps or other evidence, including evidence in electronic form, related to:

    a)   ██████ travel to and from, and presence and activities in Minnesota, Palestine, and other countries involved in ██████ transit to and from Palestine, including the identities and locations of ██████ facilitators, co-conspirators and ██████ travel history and travel plans;

    b)   ██████ ability to pay for her own travel from the United States to Palestine, and travel within the United States from 2000 until present, including all materials related to ██████ personal finances and finances of the Anti-War Committee ("AWC") Freedom Road Socialist Organization ("FRSO") and the PFLP;

    c)   ██████ potential co-conspirators, including any address books, lists, notes, photographs, videos, or letters of ██████ personal contacts in the United States and abroad;

    d)   the recruitment, indoctrination, and facilitation of other individuals in the United States to join FRSO or the AWC, including materials related to the identity and location of recruiters, facilitators, and recruits, the means by which the recruits were recruited to join FRSO or the AWC, the means by which the recruitment was financed and arranged;

    e)   the recruitment, indoctrination, and facilitation of other individuals in the United States to travel to Palestine or any other foreign location in support of FTOs including, but not limited to FARC and PFLP, including materials related to the identity and location of recruiters, facilitators, and recruits of these FTOs, the means by which individuals were recruited to travel to Palestine and other foreign locations in support of FTOs, and the means by which the recruitment was financed and arranged;

    f)   FARC, PFLP and other FTOs which the FRSO has supported, attempted to support or conspired to support;

    g)   ██████ use of the email addresses ██████ and ██████ telephone number (612) ██████ or any other telephone numbers, and Facebook, MySpace, or other social networking websites.

(2)    Computer equipment, electronic storage devices, and cellular telephones belonging to █████
       and their contents, including files, telephone numbers, photographs and videos, related to the
       evidentiary items listed in paragraph 1 above, pursuant to the procedures set forth in the
       accompanying affidavit.

AO 106 (Rev. 4/10) Application for a Seizure Warrant

# UNITED STATES DISTRICT COURT

### for the

### District of Minnesota

In the Matter of the Search of ▮▮▮▮▮▮▮ residence,
located at ▮▮▮▮▮▮▮▮▮ Minneapolis,
Minnesota 55403, which is a two-bedroom apartment on the second
floor of a multi-unit apartment complex.

)
)
)
)
)
)

CASE NO. 10-mj-389 SRN

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury
that I have reason to believe that on the following person or property

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Minneapolis, Minnesota 55403, which is a two-bedroom apartment on the second floor of a

multi-unit apartment complex,

located in the State and District of Minnesota, there is now concealed:

See attached list of items to be seized

The basis for the search under Fed. R. Crim. P. 41(c) is:

X   evidence of a crime;
X   contraband, fruits of crime, or other items illegally possessed;
X   property designed for use, intended for use, or used in committing a crime;
___   a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:  Title 18, United States Code, Section 2339B.

The application is based on these facts:

See attached Affidavit.

X   Continued on attached sheet.
___   Delayed notice of_ days (give exact ending date if more than 30 days:_) is requested under 18 U.S.C. §
3103a, the basis of which is set forth on the attached sheet.

_[signature]_

Signature of Applicant
Special Agent John Thomas , FBI

Sworn to before me, and subscribed in my presence

_September 23, 2010  3:30pm_                    at          Minneapolis, MN
Date and Time Issued                                                        City and State

_[signature]_
SUSAN RICHARD NELSON, U.S. Magistrate Judge

## ATTACHMENT A

## DESCRIPTION OF PREMISES TO BE SEARCHED

**Residence of** ███████████  ████████████████████ Minneapolis, Minnesota 55403, which is a two-bedroom apartment on the second floor of a multi-unit apartment complex.

**ATTACHMENT B**

**LIST OF ITEMS TO BE SEIZED**

**RESIDENCE OF** ██████████████████

Evidence concerning the violation of: (1) 18 U.S.C. § 2339B: Providing, attempting and conspiring to provide material support to designated foreign terrorist organizations, as follows:

(1)   Documents, files, books, photographs, videos, souvenirs, war relics, notebooks, address books, diaries, journals, maps or other evidence, including evidence in electronic form, related to:

a)   ██████ travel to and from, and presence and activities in Minnesota, Palestine, and other countries involved in ██████ transit to and from Palestine, including the identities and locations of ██████ facilitators, co-conspirators and ██████ travel history and travel plans;

b)   ██████ ability to pay for her own travel from the United States to Palestine, and travel within the United States from 2000 until present, including all materials related to ██████ personal finances and finances of the Anti-War Committee ("AWC") Freedom Road Socialist Organization ("FRSO") and the PFLP;

c)   ██████ potential co-conspirators, including any address books, lists, notes, photographs, videos, or letters of ██████ personal contacts in the United States and abroad;

d)   the recruitment, indoctrination, and facilitation of other individuals in the United States to join FRSO or the AWC, including materials related to the identity and location of recruiters, facilitators, and recruits, the means by which the recruits were recruited to join FRSO or the AWC, the means by which the recruitment was financed and arranged;

e)   the recruitment, indoctrination, and facilitation of other individuals in the United States to travel to Palestine or any other foreign location in support of FTOs including, but not limited to FARC and PFLP, including materials related to the identity and location of recruiters, facilitators, and recruits of these FTOs, the means by which individuals were recruited to travel to Palestine and other foreign locations in support of FTOs, and the means by which the recruitment was financed and arranged;

f)   FARC, PFLP and other FTOs which the FRSO has supported, attempted to support or conspired to support;

g)   ██████ use of the email addresses ██████████ and ██████████ telephone number (612) ██████ or any other telephone numbers, and Facebook, MySpace, or other social networking websites.

(2)   Computer equipment, electronic storage devices, and cellular telephones belonging to ▮▮▮▮ and their contents, including files, telephone numbers, photographs and videos, related to the evidentiary items listed in paragraph 1 above, pursuant to the procedures set forth in the accompanying affidavit.

## SEARCH WARRANT ADDENDUM

1.      In conducting the search authorized by this warrant, the government shall make reasonable efforts to utilize computer search methodology that avoids searching files, documents or other electronically stored information which is not identified in the warrant.

2.      If electronically stored data or documents have been identified and seized by the government pursuant to this warrant, the government may retain the original hard drive or other data storage mechanism. The person from whom the data storage device has been seized may request that the government provide him or her with electronic copies of the electronically stored data or documents by making a written request to the United States Attorney's Office, identifying with specificity the files, data, or software sought to be copied. The government must respond to all such requests within a reasonable amount of time, and must provide a copy of the electronically stored data or documents requested unless the copies requested constitute contraband, instrumentalities, or property subject to forfeiture.

3.      Nothing in this warrant shall limit or prevent the government from seizing the computer as contraband or an instrumentality of a crime or commencing forfeiture proceedings against the computer and/or the data contained therein. Nothing in this warrant shall limit or prevent the owner of the computer from (a) filing a motion with the Court pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure for the Return of Property or (b) making a request of the government to return certain specified files, data, software or hardware.

4.      The government shall establish a search methodology governing the review of seized data to ensure that no attorney-client privileged communications will be inadvertently reviewed by the prosecution team. In the event that documents or other records seized pursuant to this warrant are identified by the government as possibly containing attorney-client privileged communications, an Assistant United States Attorney, who is not a member of the prosecution team and who is not participating in the search, shall act as a "taint team" to set up a "Chinese wall" between the evidence and the prosecution team that will prevent any privileged material from getting through.

AO 93 (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

District of Minnesota

In the Matter of the Search of the residence of Jessica Sundin, located at ████████ Minneapolis, Minnesota 55407, which is a two-story single family residence with a front porch and a detached garage )
)
)
)
)
)

CASE NO. 10-mj-389 SRN

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the State and District of Minnesota:

████████████ Minneapolis, Minnesota 55407, which is a two-story single family residence with a front porch and a detached garage.

The person or property to be searched, described above, is believed to conceal:  See attached list of items to be seized.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before ____October 7, 2010____ .

   _X_  in the daytime 6:00 a.m. to 10 p.m.          __          at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge SUSAN RICHARD NELSON.

   __  I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

                              __     for ____ days *(not to exceed 30).*
                              __     until, the facts justifying, the later specific date of ___.

*September 23, 2010   3:30pm*          at          Minneapolis, MN
Date and Time Issued                                City and State

*Susan Richard Nelson*
SUSAN RICHARD NELSON, U.S. Magistrate Judge

## ATTACHMENT A

### DESCRIPTION OF PREMISES TO BE SEARCHED

**Residence of Jessica Sundin**: ███████████████ Minneapolis, Minnesota 55407, which is a two-story single family residence with a front porch and a detached garage.

## ATTACHMENT B

### LIST OF ITEMS TO BE SEIZED

### RESIDENCE AND DETACHED GARAGE OF JESSICA SUNDIN

Evidence concerning the violation of 18 U.S.C. § 2339B: Providing, attempting and conspiring to provide material support to designated foreign terrorist organizations, as follows:

(1)     Documents, files, books, photographs, videos, souvenirs, war relics, notebooks, address books, diaries, journals, maps or other evidence, including evidence in electronic form, related to:

a)      Sundin's travel to and from, and presence and activities in Minnesota, Palestine, Colombia, and other countries involved in Sundin's transit to and from Colombia, including the identities and locations of Sundin's facilitators, co-conspirators and Sundin's travel history and travel plans;

b)      Sundin's ability to pay for her own travel from the United States to Palestine, Colombia and travel within the United States from 2000 until present, including all materials related to Sundin's personal finances and finances of the Anti-War Committee ("AWC") Freedom Road Socialist Organization ("FRSO") and the Colombia Action Network ("CAN");

c)      Sundin's potential co-conspirators, including any address books, lists, notes, photographs, videos, or letters of Sundin's personal contacts in the United States and abroad;

d)      the recruitment, indoctrination, and facilitation of other individuals in the United States to join FRSO, AWC, or the CAN, including materials related to the identity and location of recruiters, facilitators, and recruits, the means by which the recruits were recruited to join FRSO, AWC or the CAN, and the means by which the recruitment was financed and arranged;

e)      the recruitment, indoctrination, and facilitation of other individuals in the United States to travel to Colombia, Palestine or any other foreign location in support of FTOs including, but not limited to the FARC and PFLP, including materials related to the identity and location of recruiters, facilitators, and recruits of these FTOs, the means by which individuals were recruited to travel to Colombia, Palestine and other foreign locations in support of FTOs, and the means by which the recruitment was financed and arranged;

f)      FARC, PFLP and other FTOs which the FRSO has supported, attempted to support or conspired to support;

g)   Sundin's use of the email addresses ████████████████
████████████ and ████████████████ and and telephone
number (612) ████████ or any other telephone numbers, and Facebook, MySpace,
or other social networking websites.

(2)   Computer equipment, electronic storage devices, and cellular telephones belonging to Sundin
and their contents, including files, telephone numbers, photographs and videos, related to the
evidentiary items listed in paragraph 1 above, pursuant to the procedures set forth in the
accompanying affidavit.

AO 106 (Rev. 4/10) Application for a Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
District of Minnesota

| | |
|---|---|
| In the Matter of the Search of the residence of Jessica Sundin, located at ▮▮▮▮▮▮▮▮▮▮▮ Minneapolis, Minnesota 55407, which is a two-story single family residence with a front porch and a detached garage | CASE NO. 10-mj-389 SRN |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property

▮▮▮▮▮▮▮▮▮▮▮▮, Minneapolis, Minnesota 55407, which is a two-story single family residence with a front porch and a detached garage,

located in the State and District of Minnesota, there is now concealed:

See attached list of items to be seized

The basis for the search under Fed. R. Crim. P. 41(c) is:

- X   evidence of a crime;
- X   contraband, fruits of crime, or other items illegally possessed;
- X   property designed for use, intended for use, or used in committing a crime;
- ___   a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:  Title 18, United States Code, Section 2339B.

The application is based on these facts:

See attached Affidavit.

- X   Continued on attached sheet.
- ___   Delayed notice of_ days (give exact ending date if more than 30 days:_) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Signature of Applicant
Special Agent John Thomas , FBI

Sworn to before me, and subscribed in my presence

September 23, 2010   3:30pm
Date and Time Issued

SUSAN RICHARD NELSON, U.S. Magistrate Judge

at   Minneapolis, MN
     City and State

17

## ATTACHMENT A

## DESCRIPTION OF PREMISES TO BE SEARCHED

**Residence of Jessica Sundin**: ███████████████ Minneapolis, Minnesota 55407, which is
a two-story single family residence with a front porch and a detached garage.

## ATTACHMENT B

### LIST OF ITEMS TO BE SEIZED

### RESIDENCE AND DETACHED GARAGE OF JESSICA SUNDIN

Evidence concerning the violation of 18 U.S.C. § 2339B: Providing, attempting and conspiring to provide material support to designated foreign terrorist organizations, as follows:

(1)    Documents, files, books, photographs, videos, souvenirs, war relics, notebooks, address books, diaries, journals, maps or other evidence, including evidence in electronic form, related to:

    a)    Sundin's travel to and from, and presence and activities in Minnesota, Palestine, Colombia, and other countries involved in Sundin's transit to and from Colombia, including the identities and locations of Sundin's facilitators, co-conspirators and Sundin's travel history and travel plans;

    b)    Sundin's ability to pay for her own travel from the United States to Palestine, Colombia and travel within the United States from 2000 until present, including all materials related to Sundin's personal finances and finances of the Anti-War Committee ("AWC") Freedom Road Socialist Organization ("FRSO") and the Colombia Action Network ("CAN");

    c)    Sundin's potential co-conspirators, including any address books, lists, notes, photographs, videos, or letters of Sundin's personal contacts in the United States and abroad;

    d)    the recruitment, indoctrination, and facilitation of other individuals in the United States to join FRSO, AWC, or the CAN, including materials related to the identity and location of recruiters, facilitators, and recruits, the means by which the recruits were recruited to join FRSO, AWC or the CAN, and the means by which the recruitment was financed and arranged;

    e)    the recruitment, indoctrination, and facilitation of other individuals in the United States to travel to Colombia, Palestine or any other foreign location in support of FTOs including, but not limited to the FARC and PFLP, including materials related to the identity and location of recruiters, facilitators, and recruits of these FTOs, the means by which individuals were recruited to travel to Colombia, Palestine and other foreign locations in support of FTOs, and the means by which the recruitment was financed and arranged;

    f)    FARC, PFLP and other FTOs which the FRSO has supported, attempted to support or conspired to support;

g)    Sundin's use of the email addresses ████████████████ and ████████████ and and telephone number (612)████████ or any other telephone numbers, and Facebook, MySpace, or other social networking websites.

(2)    Computer equipment, electronic storage devices, and cellular telephones belonging to Sundin and their contents, including files, telephone numbers, photographs and videos, related to the evidentiary items listed in paragraph 1 above, pursuant to the procedures set forth in the accompanying affidavit.

## SEARCH WARRANT ADDENDUM

1.      In conducting the search authorized by this warrant, the government shall make reasonable efforts to utilize computer search methodology that avoids searching files, documents or other electronically stored information which is not identified in the warrant.

2.      If electronically stored data or documents have been identified and seized by the government pursuant to this warrant, the government may retain the original hard drive or other data storage mechanism. The person from whom the data storage device has been seized may request that the government provide him or her with electronic copies of the electronically stored data or documents by making a written request to the United States Attorney's Office, identifying with specificity the files, data, or software sought to be copied. The government must respond to all such requests within a reasonable amount of time, and must provide a copy of the electronically stored data or documents requested unless the copies requested constitute contraband, instrumentalities, or property subject to forfeiture.

3.      Nothing in this warrant shall limit or prevent the government from seizing the computer as contraband or an instrumentality of a crime or commencing forfeiture proceedings against the computer and/or the data contained therein. Nothing in this warrant shall limit or prevent the owner of the computer from (a) filing a motion with the Court pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure for the Return of Property or (b) making a request of the government to return certain specified files, data, software or hardware.

4.      The government shall establish a search methodology governing the review of seized data to ensure that no attorney-client privileged communications will be inadvertently reviewed by the prosecution team. In the event that documents or other records seized pursuant to this warrant are identified by the government as possibly containing attorney-client privileged communications, an Assistant United States Attorney, who is not a member of the prosecution team and who is not participating in the search, shall act as a "taint team" to set up a "Chinese wall" between the evidence and the prosecution team that will prevent any privileged material from getting through.

AO 93 (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

### for the

### District of Minnesota

| | |
|---|---|
| In the Matter of the Search of the residence of Michael Kelly, located ▓▓▓▓▓▓▓▓▓▓▓▓ Minneapolis, Minnesota 55454, ▓▓▓▓▓▓▓▓▓▓ | ) ) ) ) ) |

CASE NO.   10-mj-389 SRN

## SEARCH AND SEIZURE WARRANT

TO:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the State and District of Minnesota:

▓▓▓▓▓▓▓▓▓▓▓▓ Minneapolis, Minnesota 55454, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

The person or property to be searched, described above, is believed to conceal:  See attached list of items to be seized.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before _____October 7, 2010_____.

    X   in the daytime 6:00 a.m. to 10 p.m.           ___    at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge SUSAN RICHARD NELSON.

___ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

           ___    for ____ days *(not to exceed 30).*
           ___    until, the facts justifying, the later specific date of ___.

September 23, 2010  3:30 pm   at

Date and Time Issued

Susan Richard Nelson

SUSAN RICHARD NELSON, U.S. Magistrate Judge

Minneapolis, MN

City and State

## ATTACHMENT A

## DESCRIPTION OF PREMISES TO BE SEARCHED

**Residence of Michael Kelly:** ███████████████████ Minneapolis, Minnesota 55454,

## ATTACHMENT B

## LIST OF ITEMS TO BE SEIZED

## RESIDENCE OF MICHAEL KELLY

Evidence concerning the violation of: (1) 18 U.S.C. § 2339B: Providing, attempting and conspiring to provide material support to designated foreign terrorist organizations, as follows:

(1)    Documents, files, books, photographs, videos, souvenirs, war relics, notebooks address books, diaries, journals, maps or other evidence, including evidence in electronic form, related to:

    a)    Kelly's travel to and from and presence and activities in Minnesota, and other foreign countries to which Kelly has traveled as part of his work in FRSO; Kelly's ability to pay for his own travel from the United States to Palestine, Colombia and travel within the United States from 2000 until present, including all materials related to Kelly's personal finances and finances of the Freedom Road Socialist Organization ("FRSO");

    c)    Kelly's potential co-conspirators, including any address books, lists, notes, photographs, videos, or letters of Kelly's personal contacts in the United States and abroad;

    d)    the recruitment, indoctrination, and facilitation of other individuals in the United States to join FRSO, including materials related to the identity and location of recruiters, facilitators, and recruits, the means by which the recruits were recruited to join FRSO, the means by which the recruitment was financed and arranged;

    e)    the recruitment, indoctrination, and facilitation of other individuals in the United States to travel to Colombia, Palestine and any other foreign location in support of FTOs including, but not limited to FARC, PFLP and Hezbollah, including materials related to the identity and location of recruiters, facilitators, and recruits of these FTOs, the means by which individuals were recruited to travel to Colombia, Palestine and other foreign locations in support of FTOs, and the means by which the recruitment was financed and arranged;

    f)    FARC, PFLP, Hezballah and other FTOs which the FRSO and Kelly have supported, attempted to support or conspired to support;

    g)    Kelly's use of the email addresses ███████████████ and ██████████████████ and telephone numbers (612) ████████ and (612) ████████ or any other telephone numbers, and Facebook, MySpace, or other social networking websites.

(2)    Computer equipment, electronic storage devices, and cellular telephones belonging to Kelly
       and their contents, including files, telephone numbers, photographs and videos, related to the
       evidentiary items listed in paragraph 1 above, pursuant to the procedures set forth in the
       accompanying affidavit.

AO 106 (Rev. 4/10) Application for a Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

District of Minnesota

| | |
|---|---|
| In the Matter of the Search of the residence of Michael Kelly, located at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Minneapolis, Minnesota 55454, ▮▮▮▮▮▮▮▮▮▮ | )  )  )  )  )  ) |

CASE NO. 10-mj- 389 SRN

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property

 Minneapolis, Minnesota 55454, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

located in the State and District of Minnesota, there is now concealed:

See attached list of items to be seized

The basis for the search under Fed. R. Crim. P. 41(c) is:

- X   evidence of a crime;
- X   contraband, fruits of crime, or other items illegally possessed;
- X   property designed for use, intended for use, or used in committing a crime;
- __   a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:   Title 18, United States Code, Section 2339B.

The application is based on these facts:

See attached Affidavit.

- X   Continued on attached sheet.
- __   Delayed notice of_ days (give exact ending date if more than 30 days:_) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Signature of Applicant

Special Agent John Thomas , FBI

Sworn to before me, and subscribed in my presence

September 23, 2010  3:30pm
Date and Time Issued

SUSAN RICHARD NELSON, U.S. Magistrate Judge

at   Minneapolis, MN
City and State

## ATTACHMENT A

## DESCRIPTION OF PREMISES TO BE SEARCHED

**Residence of Michael Kelly**: ████████████████████ Minneapolis, Minnesota 55454,
████████████████████████████████████████████

## ATTACHMENT B

### LIST OF ITEMS TO BE SEIZED

### RESIDENCE OF MICHAEL KELLY

Evidence concerning the violation of: (1) 18 U.S.C. § 2339B: Providing, attempting and conspiring to provide material support to designated foreign terrorist organizations, as follows:

(1)    Documents, files, books, photographs, videos, souvenirs, war relics, notebooks address books, diaries, journals, maps or other evidence, including evidence in electronic form, related to:

   a)   Kelly's travel to and from and presence and activities in Minnesota, and other foreign countries to which Kelly has traveled as part of his work in FRSO; Kelly's ability to pay for his own travel from the United States to Palestine, Colombia and travel within the United States from 2000 until present, including all materials related to Kelly's personal finances and finances of the Freedom Road Socialist Organization ("FRSO");

   c)   Kelly's potential co-conspirators, including any address books, lists, notes, photographs, videos, or letters of Kelly's personal contacts in the United States and abroad;

   d)   the recruitment, indoctrination, and facilitation of other individuals in the United States to join FRSO, including materials related to the identity and location of recruiters, facilitators, and recruits, the means by which the recruits were recruited to join FRSO, the means by which the recruitment was financed and arranged;

   e)   the recruitment, indoctrination, and facilitation of other individuals in the United States to travel to Colombia, Palestine and any other foreign location in support of FTOs including, but not limited to FARC, PFLP and Hezbollah, including materials related to the identity and location of recruiters, facilitators, and recruits of these FTOs, the means by which individuals were recruited to travel to Colombia, Palestine and other foreign locations in support of FTOs, and the means by which the recruitment was financed and arranged;

   f)   FARC, PFLP, Hezballah and other FTOs which the FRSO and Kelly have supported, attempted to support or conspired to support;

   g)   Kelly's use of the email addresses ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and ▮▮▮▮▮▮▮▮▮▮ and   telephone numbers (612) ▮▮▮▮ and (612) ▮▮▮▮ or any other telephone numbers, and Facebook, MySpace, or other social networking websites.

(2)   Computer equipment, electronic storage devices, and cellular telephones belonging to Kelly and their contents, including files, telephone numbers, photographs and videos, related to the evidentiary items listed in paragraph 1 above, pursuant to the procedures set forth in the accompanying affidavit.

SEARCH WARRANT ADDENDUM

1.      In conducting the search authorized by this warrant, the government shall make reasonable efforts to utilize computer search methodology that avoids searching files, documents or other electronically stored information which is not identified in the warrant.

2.      If electronically stored data or documents have been identified and seized by the government pursuant to this warrant, the government may retain the original hard drive or other data storage mechanism. The person from whom the data storage device has been seized may request that the government provide him or her with electronic copies of the electronically stored data or documents by making a written request to the United States Attorney's Office, identifying with specificity the files, data, or software sought to be copied. The government must respond to all such requests within a reasonable amount of time, and must provide a copy of the electronically stored data or documents requested unless the copies requested constitute contraband, instrumentalities, or property subject to forfeiture.

3.      Nothing in this warrant shall limit or prevent the government from seizing the computer as contraband or an instrumentality of a crime or commencing forfeiture proceedings against the computer and/or the data contained therein. Nothing in this warrant shall limit or prevent the owner of the computer from (a) filing a motion with the Court pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure for the Return of Property or (b) making a request of the government to return certain specified files, data, software or hardware.

4.      The government shall establish a search methodology governing the review of seized data to ensure that no attorney-client privileged communications will be inadvertently reviewed by the prosecution team. In the event that documents or other records seized pursuant to this warrant are identified by the government as possibly containing attorney-client privileged communications, an Assistant United States Attorney, who is not a member of the prosecution team and who is not participating in the search, shall act as a "taint team" to set up a "Chinese wall" between the evidence and the prosecution team that will prevent any privileged material from getting through.

AO 93 (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

District of Minnesota

| | |
|---|---|
| In the Matter of the Search of the AWC office, located in Room 112C, in 1313 5th Street Southeast, Minneapolis, Minnesota 55414, which is an office located in the University Technology Building on the Campus of the University of Minnesota. The AWC office is located on the first floor of the building and is approximately 300 square feet. Inside the office there is a desktop computer, a laptop computer and a file cabinet. | ) ) ) ) ) )  CASE NO. 10-mj-389 SRN |

## SEARCH AND SEIZURE WARRANT

TO:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the State and District of Minnesota:

Room 112C, in 1313 5th Street Southeast, Minneapolis, Minnesota 55414, which is an office located in the University Technology Building on the Campus of the University of Minnesota. The AWC office is located on the first floor of the building and is approximately 300 square feet. Inside the office there is a desktop computer, a laptop computer and a file cabinet.

The person or property to be searched, described above, is believed to conceal: See attached list of items to be seized.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before _____October 7, 2010_____.

__X__ in the daytime 6:00 a.m. to 10 p.m.        __       at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge SUSAN RICHARD NELSON.

___ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

__       for ____ days *(not to exceed 30)*.
__       until, the facts justifying, the later specific date of __.

_September 23, 2010   3:30pm_     at        _Minneapolis, MN_____
Date and Time Issued                                    City and State

_Susan Richard Nel_
SUSAN RICHARD NELSON, U.S. Magistrate Judge

## ATTACHMENT A

# DESCRIPTION OF PREMISES TO BE SEARCHED

**Anti-War Committee Office**: Room 112C, in 1313 5th Street Southeast, Minneapolis, Minnesota 55414, which is an office located in the University Technology Building on the Campus of the University of Minnesota. The AWC office is located on the first floor of the building and is approximately 300 square feet. Inside the office there is a desktop computer, a laptop computer, and a file cabinet.

## ATTACHMENT B

### LIST OF ITEMS TO BE SEIZED

### OFFICE OF ANTI-WAR COMMITTEE OFFICE

Evidence concerning the violation of: (1) 18 U.S.C. § 2339B: Providing, attempting and conspiring to provide material support to designated foreign terrorist organizations, as follows:

(1)   Documents, files, books, ledgers, balance-sheets, notebooks, address books, diaries, journals, or other evidence, including evidence in electronic form, related to:

    a)   AWC's financial activity in relation to the AWC educational fund, FRSO, FARC, PFLP or any of the individuals named in the affidavit who are members or affiliates of the FRSO, to include:



1. ▬▬▬▬▬
2. Jessica Sundin
3. ▬▬▬▬
4. ▬▬▬
5. ▬▬▬▬▬▬
6. Michael Kelly
7. ▬▬▬▬▬
8. ▬▬▬▬▬
9. ▬▬▬▬
10. ▬▬▬▬
11. ▬▬▬▬▬▬
12. ▬▬▬▬▬▬
13. ▬▬▬▬▬
14. ▬▬▬▬▬▬
15. ▬▬▬
16. ▬▬▬▬▬▬
17. ▬▬▬▬▬
18. ▬▬▬
19. ▬▬▬▬▬▬
20. ▬▬▬▬
21. ▬▬▬▬▬▬
22. ▬▬▬▬▬

    b)   Any documents related to the travel of anyone affiliated with the FARC, PFLP or FRSO, within the United States or internationally, from 2000 until present;

    c)   The names, pseudonyms or other identifying information about potential co-conspirators, including any address books, lists, notes, photographs, videos, or

letters regarding AWC contacts in the United States and abroad;

d)      the recruitment, indoctrination, and facilitation of other individuals in the United States to join FRSO or the AWC, including materials related to the identity and location of recruiters, facilitators, and recruits, the means by which the recruits were recruited to join FRSO or the AWC, the means by which the recruitment was financed and arranged;

e)      the recruitment, indoctrination, and facilitation of other individuals in the United States to travel to Palestine or any other foreign location in support of FTOs including, but not limited to FARC and PFLP, including materials related to the identity and location of recruiters, facilitators, and recruits of these FTOs, the means by which individuals were recruited to travel to Palestine and other foreign locations in support of FTOs, and the means by which the recruitment was financed and arranged;

f)      FARC, PFLP and other FTOs which the FRSO and AWC have supported, attempted to support or conspired to support;

(2)     Computer equipment, electronic storage devices, and cellular telephones belonging to the AWC and their contents, including files, telephone numbers, photographs and videos, related to the evidentiary items listed above, pursuant to the procedures set forth in the accompanying affidavit.

AO 106 (Rev. 4/10) Application for a Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

District of Minnesota

| | |
|---|---|
| In the Matter of the Search of the AWC office, located in Room 112C, in 1313 5th Street Southeast, Minneapolis, Minnesota 55414, which is an office located in the University Technology Building on the Campus of the University of Minnesota. The AWC office is located on the first floor of the building and is approximately 300 square feet. Inside the office there is a desktop computer, a laptop computer and a file cabinet. | ) ) ) ) ) CASE NO. 10-mj- 389 SRN |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property

Room 112C, in 1313 5th Street Southeast, Minneapolis, Minnesota 55414, which is an office located in the University Technology Building on the Campus of the University of Minnesota. The AWC office is located on the first floor of the building and is approximately 300 square feet. Inside the office there is a desktop computer, a laptop computer and a file cabinet,

located in the State and District of Minnesota, there is now concealed:

See attached list of items to be seized

The basis for the search under Fed. R. Crim. P. 41(c) is:

- X    evidence of a crime;
- X    contraband, fruits of crime, or other items illegally possessed;
- X    property designed for use, intended for use, or used in committing a crime;
- __   a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:  Title 18, United States Code, Section 2339B.

The application is based on these facts:

See attached Affidavit.

- X    Continued on attached sheet.
- ___  Delayed notice of_ days (give exact ending date if more than 30 days:_) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Signature of Applicant
Special Agent John Thomas , FBI

Sworn to before me, and subscribed in my presence

September 23, 2010 3:30pm
Date and Time Issued

SUSAN RICHARD NELSON, U.S. Magistrate Judge

at    Minneapolis, MN
City and State

## ATTACHMENT A

## DESCRIPTION OF PREMISES TO BE SEARCHED

**Anti-War Committee Office**: Room 112C, in 1313 5th Street Southeast, Minneapolis, Minnesota 55414, which is an office located in the University Technology Building on the Campus of the University of Minnesota.  The AWC office is located on the first floor of the building and is approximately 300 square feet.  Inside the office there is a desktop computer, a laptop computer, and a file cabinet.

## ATTACHMENT B

### LIST OF ITEMS TO BE SEIZED

### OFFICE OF ANTI-WAR COMMITTEE OFFICE

Evidence concerning the violation of: (1) 18 U.S.C. § 2339B: Providing, attempting and conspiring to provide material support to designated foreign terrorist organizations, as follows:

(1)  Documents, files, books, ledgers, balance-sheets, notebooks, address books, diaries, journals, or other evidence, including evidence in electronic form, related to:

    a)  AWC's financial activity in relation to the AWC educational fund, FRSO, FARC, PFLP or any of the individuals named in the affidavit who are members or affiliates of the FRSO, to include:



        1.
        2.  Jessica Sundin
        3.
        4.
        5.
        6.  Michael Kelly
        7.
        8.
        9.
       10.
       11.
       12.
       13.
       14.
       15.
       16.
       17.
       18.
       19.
       20.
       21.
       22.

    b)  Any documents related to the travel of anyone affiliated with the FARC, PFLP or FRSO, within the United States or internationally, from 2000 until present;

    c)  The names, pseudonyms or other identifying information about potential co-conspirators, including any address books, lists, notes, photographs, videos, or

letters regarding AWC contacts in the United States and abroad;

d)    the recruitment, indoctrination, and facilitation of other individuals in the United States to join FRSO or the AWC, including materials related to the identity and location of recruiters, facilitators, and recruits, the means by which the recruits were recruited to join FRSO or the AWC, the means by which the recruitment was financed and arranged;

e)    the recruitment, indoctrination, and facilitation of other individuals in the United States to travel to Palestine or any other foreign location in support of FTOs including, but not limited to FARC and PFLP, including materials related to the identity and location of recruiters, facilitators, and recruits of these FTOs, the means by which individuals were recruited to travel to Palestine and other foreign locations in support of FTOs, and the means by which the recruitment was financed and arranged;

f)    FARC, PFLP and other FTOs which the FRSO and AWC have supported, attempted to support or conspired to support;

(2)    Computer equipment, electronic storage devices, and cellular telephones belonging to the AWC and their contents, including files, telephone numbers, photographs and videos, related to the evidentiary items listed above, pursuant to the procedures set forth in the accompanying affidavit.

## SEARCH WARRANT ADDENDUM

1.     In conducting the search authorized by this warrant, the government shall make reasonable efforts to utilize computer search methodology that avoids searching files, documents or other electronically stored information which is not identified in the warrant.

2.     If electronically stored data or documents have been identified and seized by the government pursuant to this warrant, the government may retain the original hard drive or other data storage mechanism. The person from whom the data storage device has been seized may request that the government provide him or her with electronic copies of the electronically stored data or documents by making a written request to the United States Attorney's Office, identifying with specificity the files, data, or software sought to be copied. The government must respond to all such requests within a reasonable amount of time, and must provide a copy of the electronically stored data or documents requested unless the copies requested constitute contraband, instrumentalities, or property subject to forfeiture.

3.     Nothing in this warrant shall limit or prevent the government from seizing the computer as contraband or an instrumentality of a crime or commencing forfeiture proceedings against the computer and/or the data contained therein. Nothing in this warrant shall limit or prevent the owner of the computer from (a) filing a motion with the Court pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure for the Return of Property or (b) making a request of the government to return certain specified files, data, software or hardware.

4.     The government shall establish a search methodology governing the review of seized data to ensure that no attorney-client privileged communications will be inadvertently reviewed by the prosecution team. In the event that documents or other records seized pursuant to this warrant are identified by the government as possibly containing attorney-client privileged communications, an Assistant United States Attorney, who is not a member of the prosecution team and who is not participating in the search, shall act as a "taint team" to set up a "Chinese wall" between the evidence and the prosecution team that will prevent any privileged material from getting through.

STATE OF MINNESOTA           )
                             ) ss
COUNTY OF HENNEPIN           )

## AFFIDAVIT

I, John P. Thomas, being duly sworn, state as follows:

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been employed by the FBI since 2007. I am currently assigned to the Minneapolis FBI Joint Terrorism Task Force ("JTTF") and have been assigned to this position since March 2008. As part of my duties as a Special Agent, I investigate, among other things, criminal violations relating to terrorism, such as material support to designated foreign terrorist organizations.

2.      This affidavit is made in support of an application for a warrant to search: (a) the residence and detached garage of                              , located at Chicago, Illinois; (b) the residence and detached garage of Jessica Rae Sundin, located at                              , Minneapolis, Minnesota; (c) the residence and detached garage of                              located at                              , Minneapolis, Minnesota; (d) the residence of.                              , located at                              ,           Minneapolis, Minnesota; (e) the residence of                              , located at                              , Minneapolis, Minnesota; (f) the residence of Michael Hugh Kelly, located at                              , Minneapolis, Minnesota; and (g) the office of the Anti-War Committee, Room 112C, 1313 5th Street SE, Minneapolis, Minnesota, as further described in Attachment A; for evidence, described further in Attachment B, of: attempting, providing, and conspiring to provide, material support to a Foreign Terrorist Organization, in violation of 18 U.S.C. § 2339B. This application is being made, in part, pursuant to Rule 41(b)(3) of the Fed. R. Crim. P., which states "a magistrate judge - in an investigation of domestic terrorism or international terrorism - with authority in any district in which

activities related to the terrorism may have occurred has authority to issue a warrant for a person or property within or outside that district."

3.      The statements in this affidavit are based on my personal knowledge, my review of recordings and law enforcement reports, information I have received from other law enforcement personnel and from persons with knowledge regarding relevant facts, and records obtained during the course of the investigation. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause to believe that evidence of violations of 18 U.S.C. § 2339B, is located at the Premises To Be Searched.

## FACTS SUPPORTING PROBABLE CAUSE
## TO SEARCH THE SUBJECT PREMISES

### Summary

4.      The Freedom Road Socialist Organization ("FRSO") is a United States based organization, whose members share the goal of overthrowing the United States' government, with districts in several states. As shown below, the FRSO supports at least two designated Foreign Terrorist Organizations: (1) the Revolutionary Armed Forces of Colombia ("FARC"), based in Colombia; and (2) the Popular Front for the Liberation of Palestine ("PFLP"), based in the Middle East. Both the FARC and the PFLP share an ideology with the FRSO. Based on this investigation, I believe that probable cause exists to show that FRSO members have supported the PFLP in the following ways, among others: (1) using FRSO members and non-members to take cash from the United States to members of the designated foreign terrorist organization PFLP, see e.g. paragraphs

2

44, 46, 55, 57, 58, and 65, infra; (2) conducting fundraising for members of the PFLP who are present in the United States, see e.g. paragraph 42, infra; (3) conducting fundraising to support the PFLP, see e.g. paragraphs 49, 50, 51-54, 59, and 64, infra; (4) conducting fundraising for members of the FARC who are present in the United States, see e.g. paragraph 28, infra; (5) meeting with members of the FARC in Colombia at FARC camps to assist FARC in soliciting individuals to provide them with money, see e.g. paragraphs 27, 32, and 33, infra. The FRSO sends material support in the form of cash to individuals who in some cases are members of the PFLP or FARC but who are also members of groups that are not foreign terrorist organizations, see e.g. paragraph 27 (FARC) and paragraphs 40, 42, 51, and 54 (PFLP). Based on my training and experience and what I have learned in this investigation, this is a method employed to attempt to disguise from law enforcement the fact that the FRSO and its members are providing material support to a designated foreign terrorist organization.

**Introduction to the FRSO and Other Organizations**

5.    UC1 has been a law enforcement officer since September 1997. Many of the allegations herein are based on undercover work performed by UC1 beginning in 2008. According to UC1, in 2008, while working in his/her undercover capacity, UC1 met FRSO member

                    . UC1 reported that         later invited UC1 to a meeting at         home in July 2008. According to UC1, he/she was introduced to other members of FRSO, was vetted and assessed, and was subsequently recruited to become a member of FRSO. Since 2008, UC1 has spent hundreds of hours meeting with FRSO members. UC1 recorded many of the conversations and meetings he/she had with FRSO members beginning in September 2008.

3

6.     During these recorded sessions, UC1 learned that FRSO is an organization that has branches in several states in the U.S., including Illinois, Minnesota, Michigan, Arizona, North Carolina, California, and Wisconsin.  UC1 learned that FRSO convenes a "Congress" that meets every three years to elect national leadership and to set a new agenda and goals. UC1 also learned that FRSO is organized and has a clear command structure both nationally and on the state level. UC1 further learned that FRSO has a "Standing Committee," which is the ruling body of the FRSO, and a "National Executive Committee," which gives input to the Standing Committee. In May 2010, UC1 attended FRSO's Congress in Northbrook, Illinois. During the Congress, FRSO re-elected the following individuals to these committees:

Standing Committee
Michael "Mick" Hugh Kelly
FRSO Member R
FRSO Member A
FRSO Member J

National Executive Committee


FRSO Member B
FRSO Member C
FRSO Member D

7.     During the course of this investigation, UC1 learned that the FRSO operates both openly and secretly.  Publicly, the organization holds itself out to be a political organization.  As detailed below, and as stated by various members of FRSO's leadership, FRSO's secret goal is to violently overthrow the government of the United States.  Additionally, FRSO members secretly provide material support to the FARC and PFLP, two designated Foreign Terrorist Organizations.

4

8.      The FARC is a Foreign Terrorist Organization, first designated as such pursuant to

Title 8, United States Code, Section 1189, by the U.S. Secretary of State, on October 8, 1997

(Federal Register, Vol. 62 Number 195, Page 52651), and most recently on July 7, 2009. The FARC

has also been designated as a Specially Designated Global Terrorist on October 31, 2001 and a

Significant Foreign Narcotics Trafficker on June 2, 2003 by the Department of Treasury's Office of

Foreign Assets Control.

9.      The PFLP is a Foreign Terrorist Organization, first designated pursuant to Title 8,

United States Code, Section 1189, by the U.S. Secretary of State, on October 8, 1997, (Federal

Register, Vol.62 Number 195, Page 52650), and most recently on July 7, 2009. The PFLP has also

been designated as a Specially Designated Global Terrorist on October 31, 2001 by the Department

of Treasury's Office of Foreign Assets Control.

10.     During an April 15, 2009, recorded conversation, FRSO member Jessica Rae Sundin

("Sundin") told UC1 that FARC and PFLP are both like family: "Commies fighting for national

liberation in other countries? We love those guys."[1]  In a recorded conversation on September 29,

2009, UC1 asked                                    if one of the reasons why FRSO is such close

friends with the FARC is because of the FARC's "military expertise."          said "yes."

further stated "that's one of the key things, why we need to have them close by."          said that "we

are not at that point yet and there is a need to build mass movements that are strong and militant."

---

[1]My descriptions of recorded conversations made by UC1 are summaries based on my review
of the recordings, the review of recordings by other JTTF members, UC1's reports describing those
recordings, and my understanding and UC1's understanding of the context of the recorded
conversations. These descriptions are not based on a final, verbatim transcript. Since this affidavit
is offered for a limited purpose, I have not included a description of every topic discussed or every
statement contained in any recorded conversation.

5

said there is a need to recruit people from "military and police forces."        said that everyone in the group believes that it is great that members are "learning how to use weapons."

11.    On July 2, 2009, UC1 recorded a meeting with              During the meeting, looked up PFLP on Wikipedia and saw that it is called a "terrorist organization."        laughed and said "yes."        said that she is a "big fan" of terrorist groups.        stated that the PFLP is often the planner of actions, while Hamas has the people, money, and supplies to carry it out.

12.    UC1 learned from Minneapolis FRSO members that FRSO has used the Anti-War Committee and the not for profit entity, Anti-War Committee Education Fund, to steer money to the PFLP. An application filed with the IRS in 2004 to establish the Anti-War Committee Educational Fund's not-for-profit status is signed by Individual B as the treasurer and the point of contact. The form lists the Anti-War Committee Educational Fund's board members as Individual B, FRSO members        Sundin,                                    i, and two other individuals.

**Recruitment Period and Invitation to Join FRSO**

13.    Prior to being formally invited to join the FRSO, UC1 was required to attend "educational sessions" in Minneapolis to learn about FRSO's philosophies. These sessions were taught by FRSO Standing Committee member FRSO member R and other Minneapolis FRSO members such as Sundin and

14.    On March 28, 2009, UC1 recorded a meeting with Sundin. Sundin informed UC1 that FRSO was a "revolutionary group" that was "currently building seeds for revolution in the U.S." UC1 asked Sundin if FRSO was prepared for an armed revolution or whether members were just "talking." Sundin stated that "we wouldn't want anyone to join our group who didn't support armed revolution in the United States." Sundin stated that FRSO's "strategy for revolution is not electoral."

6

In this same meeting, Sundin told UC1 that the FRSO revolution will be an "insurrection" strategy that would target and seize communications and transportation industries. Sundin explained that by "seizing" she meant "by force." Sundin stated that she did not think that a revolution would happen in the next ten years, but if it did, FRSO would be ready. UC1 asked Sundin whether she would be involved in "street fighting." Sundin responded, "if that was my assignment, yeah."

15.     On April 4, 2009, Sundin told UC1 in a recorded conversation, that FRSO's "central task" is to build a "revolutionary organization." On April 11, 2009, UC1 recorded a conversation with FRSO members Sundin,         FRSO Member G, and FRSO Member E. Sundin stated that military strategy was something that FRSO studied from other countries. Sundin added that "we definitely believe that we need practice and we need to develop that, um, spirit of confrontation. There are people in our society that know how to shoot guns. And we would hope to be among them one day." Sundin stated that the "main task of a revolutionary task force is to create the condition for a revolution."

16.     On April 15, 2009, in a recorded conversation, Sundin invited UC1 to join the FRSO. Sundin explained that FRSO is a national organization that is broken down into districts and units. Sundin stated that FRSO member R was FRSO's national chairperson and that the national leaders include FRSO member R , Michael "Mick" Hugh Kelly ("Kelly,") FRSO Member A, and FRSO Member J. Sundin said that she was the FRSO's district leader in Minneapolis and that UC1 would directly report to     who was a unit leader. Sundin told UC1 that FRSO exists "to organize for revolution and socialism . . . . you can't write it down if you want to function, um, but by revolution we do mean armed struggle."

7

17.     Recruiting new members to FRSO is an ongoing part of the organization's mission. UC1 has observed FRSO members making notes on documents regarding observations of potential recruits as part of their established process for observing and recruiting new members. Once new members are recruited, they begin to receive instructions as to the central task of the FRSO, namely, the violent overthrow of the United States government. For example, during a recorded conversation on April 19, 2009, Sundin welcomed new FRSO members by stating "we need new fighters." Additionally, during a recorded conversation on November 30, 2009,          explained that an FRSO recruit had questions about the "killing people part" of FRSO. Sundin told          that a "better way" to discussing "killing people" was to talk about "revolutionary violence."

### FRSO's Goals and Methods Used to Conceal Activities

18.     UC1 agreed to become a member of FRSO on April 15, 2009. According to UC1, on this date, Sundin gave him/her a document that had a blank piece of paper stapled to the front. The next page of the document was a title page called "UNITY DOCUMENT." The document had the words "[n]ot for public distribution" written on each page. The organization's name did not appear anywhere within the document. Under organizational policy, the document stated the following:

> [N]o progressive struggle ever got anywhere in the United States without facing violent repression . . . . Therefore . . . not only is repression inevitable; we are facing repression every day . . . . [I]f repression is a constant of ruling class policy, then defense against it must be a constant of revolutionary policy...

> There is ample evidence that we have been and are either intermittently or constantly under one or another form of surveillance. In general, the smartest policy is simply to assume that we are under some kind of surveillance . . . . our main line of defense against repression will be secrecy; there is no realistic alternative.

8

The details of the organization's infrastructure from finances to membership lists to numbers to meeting places to individual responsibilities and so on cannot be public information . . . . And if you recognize on top of this that infiltration is not only possible but likely, then you're forced to the following conclusion: compartmentalization of knowledge is necessary . . . . otherwise there can be no secrecy and no protection of information.

19.     After becoming a member of FRSO, UC1 learned that all FRSO members are required to create "red" names for themselves. This fictitious name is used when attending FRSO meetings so, if the meetings were recorded, the recording would not reflect the actual names of those speaking at the meeting. UC1 also learned that FRSO members had "red" email accounts to be used only for sensitive FRSO communications and other email addresses used for communications that were not as sensitive. According to UC1, the "red" names and e-mail accounts are intended to be known only to other FRSO members.

### FRSO Members Advocate and Explain Their Plans for Violent Overthrow of the United States Government

20.     In a recorded conversation on July 2, 2009,       told UC1 that "we have people in [FRSO] who used to be in the military...when we got to that stage, we would rely on some of their expertise."       asked herself, "Do we support the overthrow of the U.S. Government?"       then answered this question, "Oh yeah." She added that the FRSO process is "not electoral."       stated that FRSO, however, is "far away" from being able to organize an armed resistance in the United States, but that was the end goal.

21.     On July 6, 2009, UC1 attended an FRSO meeting at FRSO Member E's residence. Also present were       . Sundin and       . The group discussed an FRSO reading and how the reading applied to FRSO and armed revolution in the United States. On September 14, 2009, UC1 recorded a conversation with                  . During this conversation, UC1 asked       what she

9

would do during the revolution.          responded that she would "fucking fight and killing (sic)
people for the revolution."          stated that she did not know how to shoot a gun, but stated that
she has asked Kelly to take her shooting and that Kelly has promised to do so.          later said that

might be a good military strategist, but acknowledged that if she could not fight, people might
not take orders from her.

22.     On January 21, 2010, in a recorded meeting,          gave UC1 a document titled
"Central Task (FRSO 2010)," which stated that the central task of FRSO was to build a
"revolutionary communist party" that would "seize state power." The document said that in order "to
transform society" it would have to "populariz[e] the need for revolution -- the need to violently
overthrow and then repress the capitalist class that is temporarily holding power." The document
further stated that "[t]he seizure of state power by the masses and their army is the only way."

23.     On May 30, 2010, in a recorded conversation, Kelly told UC1 and other FRSO
members that other communist groups in the United States "work within the law," which Kelly said
was "stupid." Later that day, Kelly stated that the FRSO sat down a few years ago to discuss what
would need to be done for an "armed revolution." Kelly said that they studied a book on revolution
and put together a map of areas in Minneapolis that they would need to seize as part of an armed
revolution in Minnesota. Kelly informed UC1 that the group decided that it would need to "take over
a government building, take over city hall, and infiltrate the unions." Kelly stated that "we are not
there yet" and that they needed to recruit more people.

### Material Support of Foreign Terrorist Organizations

24.     During UC1's membership with FRSO, he/she learned that FRSO provides material
support to terrorist organizations through donations to individual members of foreign terrorist

10

organizations, to unions operating as fronts for the terrorist organizations and through "delegations" composed of FRSO members visiting the terrorist organizations.[2]

25.     On May 7, 2009, UC1 recorded a conversation with        and FRSO Member G.  In the conversation,        stated that FRSO supports many international groups and that Kelly is in charge of international relations for FRSO.        said that she will defend and support groups she is not fond of, including designated Foreign Terrorist Organizations such as Hamas, Hezbollah, and Al Qaeda, as long as they are fighting the United States.        said that the FRSO is not going to send anyone "military aid" because the FRSO does not have that kind of money.        said that if they had the resources they would "send fighters."        said that "one person's terrorist is another person's freedom fighter."

26.     On August 18, 2009, in a recorded conversation,        told UC1 that FRSO has a long-standing relationship with the FARC.        said that she has met with the FARC several times.

      explained to UC1 that the FARC is still on the terrorist list and "it's still illegal to meet with them, fund, or give money to them."

### The FARC's Connection to a Colombian Union

27.     In a recorded conversation on March 28, 2009, Sundin stated to UC1 that "giving direct financial support to groups on the terrorist list places us at risk."  Sundin said that "if I got caught bringing a suitcase of money to the FARC, I would be going to jail for a long time, whereas,

---

[2]Throughout the course of this affidavit, foreign travel of FRSO members is discussed at length. With one exception, I have corroborated that FRSO members have traveled to the various locations they discuss, to include the Middle-East and South America, as they described in numerous conversations to UC1 and UC2. I have not been able to corroborate the travel of Sundin to Colombia in 2000. However, she appears in a video with an identified FARC member at what she describes as a FARC training camp, which itself is highly corroborative of her travel to Colombia to visit the FARC, as she explains in her recorded conversations with UC1 and UC2.

if I bring a suitcase full of money to the legal union, they could do the same important work that's led by the same important people." I know from my conversations with UC1, from my review of evidence in this case, from conversations with other JTTF agents, and from my review of reports about the FARC, that there are multiple members of the FARC who do not publicly acknowledge their FARC membership and who are members of various unions in Colombia.

28.     Many FRSO members spoke to UC1 about          , a Colombian union member who has been on trial in Colombia for her alleged membership in the FARC. Sundin stated in a May 2, 2009, recorded conversation with UC1 that          came to Minneapolis in 2002 or 2003 when          was pregnant. On May 13, 2010,          told UC1 in a recorded conversation that she helped raise money for          said that          is "underground," but that she "is a member" of the FARC.          told UC1 that she had a conversation with          where          acknowledged her FARC membership to

**FRSO's Trips to Meet with the FARC**

29.     In July, 2008,          told UC1 in an unrecorded conversation that she has attended "camps" in Colombia and that she has spent "time with the FARC rebels." In a recorded meeting on November 13, 2008,          told UC1 that she and other members of a group that traveled to Colombia could move around freely in Colombia because of her contacts with the FARC and the National Liberation Army (ELN) through FRSO.[3]

---

[3]The National Liberation Army is a separate designated Foreign Terrorist Organization that operates in Colombia.

12

30.    On May 7, 2009, UC1 recorded a conversation with          and FRSO Member G. In that conversation,          told UC1 that she wanted to build a revolutionary movement in the United States, but did not think now was the time to pick up arms. When FRSO Member G asked about military training,          said that FRSO national leader Kelly owns guns and likes to go shooting.          suggested that FRSO Member G and UC1 contact Kelly to practice shooting.

31.    On August 25, 2008, during an unrecorded session of the Anti-War Committee, an organization with numerous FRSO members,          responded to a question regarding another FRSO-linked organization's support of the FARC rebels.          stated that they could not talk about it publicly because "we would get arrested," but that "we all do support them in a variety of ways."

32.    On March 5, 2009, UC1 met with Individual C, who stated that when Individual C and          went to Colombia, they held a fundraiser to pay for the trip. According to Individual C, the money from the fundraiser was turned over to          . Individual C said that they left a donation for various groups, including their hosts.

33.    On January 1, 2010, UC1 recorded another conversation with          stated that she was in charge of the FRSO "delegation" in 2006 to Colombia.          said that during the delegation she and another FRSO member interviewed the "Commandant" of the FARC camp that they visited.          said no one can legally give money to the FARC because it is on the State Department terrorist watch list. When UC1 stated that he/she understood FRSO had a way to get the money to "our friends overseas,"[4]          said "yes."

_____

[4]According to UC1, FRSO members, including          refer to the FARC and PFLP as "our friends overseas" or "our special friends."

34.     On February 5, 2010, in a recorded meeting at          home,      told UC1 that she

has met with both the clandestine FARC members and FARC guerillas with guns.          said she

likes to refer to the clandestine FARC members as the "Freedom Roaders."

### Jessica Sundin

35.     On December 4, 2008, UC1 recorded a meeting with Sundin, who stated that she has

met with and knows people that she describes as leaders of terrorist groups. Sundin used Raul

Reyes, the now-deceased leader of the FARC, as an example. Sundin said that the United States may

consider her to be a traitor and, if ever called to testify before a grand jury, she would have to lie so

as not to expose her associations with terrorists. Sundin told UC1 that UC1 may also be called upon

to lie to a grand jury.

36.     On May 2, 2009, UC1 recorded a conversation with Sundin and FRSO Member R

where Sundin described a trip she took to Colombia in 2000. Sundin stated that after arriving in

Colombia, she had to say a code word. Sundin said she was picked up by a sports utility vehicle that

took her to then-FARC leader Raul Reyes' camp. Sundin stated that she "tr[ies]" to maintain contact

with FARC, but that       follows the group the most.

37.     UC2 is an undercover FBI agent purporting to be UC1's life partner. On July 24,

2009, UC1 and UC2 went to Sundin's home and recorded the relevant portions of conversations they

had. Sundin showed UC1 and UC2 the video from a trip she had taken to Colombia to meet with

members of the FARC in 2000. The video, which was in Spanish (UC2 is a fluent Spanish speaker),

showed Sundin in a FARC camp and with, as she described, FARC Secretariat Raul Reyes. The

video shows Sundin interviewing Reyes, who solicits donations to the FARC from viewers of the

video.  Sundin stated that the video was several hours long but she only showed portions to UC1

14

and UC2. Sundin stated that she had a photo album from the trip but did not know where in her house it was located.

38.    Sundin also stated during the conversation that she and those she traveled with were invited guests of the FARC. She told UC1 and UC2 about three American missionaries that had been killed by the FARC because of a miscommunication, but that she was safe because she followed the proper lines of communication and had a password.

39.    In an unrecorded conversation[5] on August 27, 2009,        asked UC1 if UC1 would attend an FRSO delegation to Colombia in 2010.        stated that some members of past delegations have met with an individual whose "name is on the terrorist list" and who "is not allowed in the country [United States] anymore."

### The PFLP's Connection to a Palestinian Organization

40.    In a July 2, 2009, recorded conversation UC1 had with        stated that the Palestinian "Women's Union" (also referred to as the "Women's Committee") is specifically related to the PFLP. In UC1's January 1, 2010 conversation with        , she informed UC1 that FRSO sends money to the Women's Union to help organize people against Israel, and by doing this it frees up the Palestine people to spend more money on other things. UC1 asked        if the "PF" is "actively connected to the Women's Union."[6]        said "yes."

---

[5]Certain conversations were partially recorded to save on the battery life of the recording device. This particular conversation was partially recorded, though the majority of the content cited above was not, because, according to UC1, UC1 was holding something in his/her hands and was unable to activate the recording device.

[6]FRSO members often refer to the PFLP as the "PF."

15

41.     On November 5, 2009, Sundin told UC1 in a recorded conversation that FRSO's

contacts in the Women's Union are PFLP members. Sundin stated that not everyone in the union is

a PFLP member, however.

42.     On November 11, 2009, UC1 recorded a conversation with FRSO Member E, who

stated that she hosted a fundraiser for the Women's Committee when one of its members, Maha

Nassar, was in Minneapolis. On May 30, 2010, in a recorded conversation with Kelly and FRSO

Member E, Kelly stated that when Nassar was in the United States, he took her to a bar where they

"talked, drank, and smoked." Kelly said that, at the time, Nassar was a member of the "Central

Committee" for the PFLP. In the same conversation, FRSO Member E stated that Nassar came to

her house for a fundraiser and that they raised about $1,000. FRSO Member E said that she assumed

part of the money went for "the plane ticket, and the rest, who knows." FRSO Member E stated that

she "felt good" about raising the money. After Nassar passed away on or about October 10, 2008,

the FRSO posted on its website a tribute to Nassar, written by the Women's Committee. On October

11, 2008,        forwarded UC1 an email from FRSO member                                   ')

email   address        _              ·  that was sent to            email   address

(                  ,  Kelly's  email  addresses                                   and

               ), and        email address                    , and another FRSO

member. The email stated:

> you probably saw my announcement about the passing of maha nassar in Palestine.
> she was our delegation host when          joined me there a few years back.
> one of the popular conference organizers in ohio sent a link to the fight back
> interview that was done with maha a few years back as well, to the pop conf listserve.
> maha was an incredible leader and a member of the pf's central committee. I know
> that I'm a stronger organizer for having known her.

16

### "Delegations" to Meet with the PFLP

43.    As detailed below, many FRSO members have taken trips, or "delegations," to the Middle East to meet with and provide money to the PFLP. Some of these trips have been coordinated by Chicago FRSO member

44.    On February 19, 2009, in an unrecorded conversation,        told UC1 that last trip to Palestine was coordinated by        , who UC1 knows to be a Chicago FRSO member.        told UC1 that she stayed with those friendly to the PFLP on the trip. When UC1 asked if they could bring items to Palestine when they traveled in the summer of 2009,        stated it was better to just give cash so "they" are able to spend it as needed.        said "they" will know better than "us" what is needed.

45.    In a recorded conversation on March 8, 2009,        informed UC1 of her travel with        to the West Bank and Gaza Strip in 2002.        said that she told a "totally fabricated story" to the Israeli security officers at the airport check point.        stated that while in Tel Aviv she was searched by the Israeli authorities and challenged about having been in Gaza.        said that they were fortunate to have mailed anything questionable before she was searched, to an FRSO member in Minnesota from a post office in Jerusalem.

46.    On March 12, 2009, UC1 recorded a meeting with        and Sundin.        stated that in her trip to Israel and the West Bank in 2004,        spent time with "PF" members.        said they have brought cash in the past rather than medical supplies because "[i]t's just easiest . . . . Then the cash has, basically, the option of going anywhere."

17

47.         told UC1 in a recorded conversation on July 2, 2009, that            FRSO red name is        after PFLP founder            . On April 2, 2010, during a recorded conversation,        told UC1 that        works with the "PF."

### August 2009 Trip to the Palestinian Territories

48.     On October 14, 2008, UC1 had an unrecorded conversation with        who asked UC1 if UC1 was interested in making a trip to Palestine in the Summer of 2009. UC1 responded that he/she would be interested in the trip, which was organized by        . On May 28, 2009, Sundin told UC1 that        primarily communicated about the trip via text messages, but that Sundin has also been copied on emails from        .

49.     On January 15, 2009, UC1 recorded a conversation with Sundin and others. Sundin asked UC1 if he/she needed financial assistance for the trip to Palestine. Sundin stated that it was a good time for a fundraiser. According to UC1's written report, Sundin stated that they could raise "a dollar for us and a dollar for them" when they get there.

50.     On May 27, 2009, UC1 recorded a meeting with        who suggested that Individual C and UC1 plan events to raise money for travel to the Palestinian Territories. UC1 asked whether there still would be a need for all the fundraising if Individual C did not travel.

51.     On July 2, 2009, UC1 recorded a meeting with Sundin and        Sundin asked UC1 how much money UC1 had raised for the Palestinian delegation. UC1 responded that he/she had raised $1,800.        said that this amount would cover the cost of the plane ticket. Sundin suggested that UC1 host an additional fundraiser with Individual C. UC1 asked Sundin if they would give the money to the Palestinian Women's Union, which was hosting the trip. Sundin responded, "that's what we're saying. Where they actually put it is up to them." On the same day,

18

but in a different recorded conversation,        said that the people organizing the trip to Israel are in the "PF," most of the activists will be in the "PF" or on the "PF path."        stated that a majority of the Women's Union members are "PF."

52.    In a recorded conversation on July 2, 2009,        said that giving money to the Women's Union means that the money "goes to a PF project. It might not buy guns, but it allows them to have more money for guns" because they are not spending it on health care.        stated that she "assume[d]" that        father is a member of the PFLP in Palestine.

53.    On July 6, 2009, in a recorded meeting, Sundin told UC1 that "we should try to bring $1,000 more . . . as a great contribution." FRSO Member E said that she "hope[d] we can get more" than $1,000. Sundin told FRSO Member E and UC1 not to mention the Palestinian Women's Union's connection to the PFLP and added that people who know would understand who the Palestinian Women's Committee is connected to without being told.

54.    On July 13, 2009, UC1 recorded a meeting with        and FRSO members        at        residence at        in Chicago.        stated that        would be sending money to Palestine.        said that five people from Minneapolis, one from Chicago, and one from Ohio would be going on the delegation.        informed        about an upcoming fundraiser for the delegation and asked if there was anything they should not say when discussing the Women's Committee. When asked,        agreed not to mention the connection to the "PF" and added "don't say we need money for lawyers, guns, and money or anything like that."

55.    In the same meeting,        said that, when traveling to Israel, there should be no problem carrying money into Israel as long as it was "under $9,999."        stated that "red"

19

(covert) conversations with the PFLP would happen at night and that FRSO Member E and UC1 would have to separate from the group to engage in those conversations. When _____ stated that Sundin wanted to raise another $1,000, _____ asked, "do you want the additional money to go to what I think you want it to go to?" _____ stated that he would have them give "the additional money to '[Individual A]' in Ramallah because he knows who to give the other money to."

56.    A July 16, 2009, email from _____ email account to UC1 and others stated that Individual A is "a chicagoan whom none of you has yet met." The email stated that Individual A "will be one of our delegation coordinators, and he is already in palestine. he will hook up with you in ramallah." Later, the email stated that Individual A "and the palestine-based coordinators, the union of palestinian women's committees, are working on finalizing the itinerary as I write." My review of travel records shows that Individual A left the United States from O'Hare International Airport to Jordan on July 14, 2009, and returned to O'Hare International Airport on August 29, 2009.

57.    On July 16, 2009, UC1 recorded an orientation meeting for the Palestinian delegation at FRSO Member E's Minneapolis residence. Individual C and _____ were also in attendance. _____ instructed the group on how to lie to Israeli security and told the group it was important to put together a fake itinerary and memorize it. _____ instructed everyone to give FRSO Member E $100. _____ said that the remaining $700 to $900 should be given to Individual A, "who will give it to the right people."

58.    On July 30, 2009, UC1 went to Individual B's home to pick up two checks totaling $706 from the Anti-War Committee. In conversation recorded by UC1, Individual B said that they had raised $4,100 for the delegation and that $2,000 of this was for a "donation." Individual B said that the Anti-War Committee Educational Fund made a "grant" to the Anti-War Committee, which

20

in turn issued the checks for the delegation. UC1 asked Individual B why the check came from the Anti-War Committee and not the Anti-War Committee Educational Fund. Individual B explained that she did not want to risk the Anti-War Committee Educational Fund's non-profit status because "we are sending money to a terrorist organization, basically." Individual B said she had a memo on how to move money from one fund to another and that it was all a big smoke screen. Individual B stated that if the Anti-War Committee was "audited or looked at by the FBI, it would be in jeopardy."

59.     Later that day, UC1 returned to Individual B's home and recorded an Anti-War Committee meeting in which        and Sundin were present. At the meeting, UC1 explained that they were $64 short of a $2,000 donation. According to UC1,        provided UC1 with $60 and Sundin donated $5.        said they raised a total of over $4,000 for delegation. Sundin said that it was important for people to be comfortable with the lies they have to tell to get through Israeli security. Sundin checked UC1's story that he/she was supposed to tell Israeli security and made last-minute suggestions to that story.

60.     On August 1, 2009, UC1 arrived in Israel with the other "delegates." Israeli security denied entry to UC1, FRSO Member E, and Individual C, but allowed entry into the country to Delegate A and Delegate B.

61.     On August 13, 2009, UC1 returned the money he/she had been given by the Anti-War Committee to take on the Palestinian delegation to Individual B. During the recorded meeting, Individual B said she thought the money was still going to Palestine, despite the fact that UC1 was not allowed to enter Israel. Individual C stated that Individual C and FRSO Member E had emailed

about getting money over to "them" while Delegates A and B were still in Palestine.

21

Individual C said that         had stated that while sending the money to Palestine was a good idea, he needed to think about how to get it there and that it was complicated.

      62.     On August 17, 2009, UC1 recorded an FRSO unit meeting, which was attended by Sundin,     FRSO Member E, and others. FRSO Member E stated that she received a text message from       about sending a money order to him rather than a check for her part of the donation money she had taken to the Palestinian Territories.

      63.     On August 21, 2009, UC1 recorded a meeting with Sundin, Individual B, and Individual C. Sundin stated that she had heard from       who was wondering where the money was. Sundin stated that       had received money from FRSO Member E, but was expecting more. UC1 saw Individual C hand Individual B two envelopes. Individual C said one had the donation of $920 and the other had $800.

      64.     On August 26, 2009, UC1 received a forwarded email originally from an email account that FRSO Member E uses. The email was originally addressed to       email account (       and Sundin's email account       . The email stated that FRSO Member E "had a message from       today wondering about the $ for palestine. I sent him $1100 in a money order which was my $800 for expenses plus the checks that dribbled in after the fundraiser. know the AWC had 2000 more; fundraising plus [Individual C's] expense $. let me know if I should be doing anything about the 2000." The email was forwarded to Individual B's email account. A response from Individual B's account to FRSO Member E's and Sundin's email accounts stated "I will take care of it. I only recently got the information about what to do with the money. I will be making arrangements tomorrow."

65.    On August 28, 2009, UC1 had a conversation with Sundin that was not recorded because of a recorder malfunction but is reflected in a written report. Sundin stated that                       was trying to reach her with respect to the Anti-War Committee money. Sundin said that she had seen an email from Individual B stating that the money had been sent to              Sundin said that              will be sending money with someone going to Palestine. Sundin stated that the money will get to the "right people." UC1 asked if Sundin meant the "PF"? Sundin nodded affirmatively.

66.    On September 19, 2009, UC1 recorded a conversation with Sundin. UC1 asked Sundin if              had sent the money "over there." Sundin responded, "yeah, yeah."

67.    An analysis of              bank account shows that on October 9, 2009, two postal money orders from FRSO Member E, totaling $1,100, and a federal credit union check for $2,800 payable to the "Anti War Committee or              ," were deposited into              s and his wife's joint checking account. The balance of the account, just prior to the $3,900 deposit, was $380. On October 13, 2009, of the $3,900 deposited on October 9, 2009, $3,000 was transferred to              and his wife's joint savings account. On October 19, 2009, $2,000 was withdrawn from the savings account in cash and $1,000 was transferred back to the checking account.

### Receives $1,000 to Give to the PFLP

68.    On March 4, 2010, UC1 recorded a conversation with              UC1 told              that UC1's father had left him/her a package, which included envelopes and a video called "Women in Struggle," when he recently died. UC1 told              that the video was about women in the PFLP who

23

admitted killing and bombing targets in Israel. UC1 said that his/her father left $1,000 for UC1 to get to the "organization of the women in the video."        said that they can "get it to our people."

       told UC1 to talk to              at the FRSO Congress meeting in May 2010.       said that "if that's what you want to do with it, we can get it there" and said that $1,000 "will go far in a place like Palestine." UC1 said that the $1,000 was for the women "which were the PF."

69.   On March 10, 2010, UC1 recorded a meeting with Sundin in which they discussed the "Women in Struggle" video and UC1's father leaving $1,000 for the PFLP. UC1 told Sundin that        had agreed to speak with              about how to get the money to the "PF" since she believed that some people would be going to Palestine in the summer. Sundin said that "someone will, yeah."

70.   On March 11, 2010, UC1 recorded a conversation with              and told        about the $1,000 inheritance that UC1's father purportedly intended for the PFLP. UC1 informed        that UC1's father regretted not giving UC1 money when UC1 was part of the delegation to Palestine in 2009.       said that "we have ways to get it there, too."       stated that a delegation will be going there this year. UC1 asked if the money would "still get to the PF."       said "yes."

71.   On May 20, 2010, UC1 recorded a conversation with              in which UC1 discussed the money UC1's father supposedly wanted donated to the PFLP. UC1 told        that        said that "we could probably get that cash there via . . . ."        interjected ' stated that he "has that ability."        told UC1 that she would contact        and let him know that he needs to talk to        regarding a "monetary donation to people in his country."        said she would send        a text. According to UC1,        then appeared to type a text message on her cell phone.        then said she just wrote        to say that when they        and ) see each other next,        should remind        about        "NGO."

24

said "NGO" was code in case someone was listening and also because groups they deal with are NGOs.      said that "the groups that the PFLP have, in Palestine, are NGOs."

72.     From May 28, 2010, to May 31, 2010, UC1 attended FRSO's national meeting at the Crowne Plaza Hotel, 2875 North Milwaukee Avenue, Northbrook, Illinois, which FRSO calls its "Congress." These meetings were open only to dues paying FRSO members. The meetings were attended by FRSO leaders, including FRSO member R, Kelly, FRSO Member A, and FRSO Member J. There were approximately 60-70 attendees, including     Sundin,     , FRSO Member E,

During the FRSO Congress, the FRSO employed security measures to ensure the secrecy of the proceedings and discussions. Guards were posted inside the door of their meeting room while the Congress was in session.

73.     On the evening of May 29, 2010, UC1 approached     , who were speaking with one another, and recorded the ensuing conversation.     told UC1 that she had spoken with     and that "it is going to be taken care of."     told UC1 that wife will be leaving for Palestine in about a month, so it will not be a problem to get done what UC1 needed to get done.     said, "yes, it should be easy."     said it is especially easy to get the money there when a family member is going. UC1 asked "would it actually go to the PF."     responded "yeah, yeah."     said he would tell his wife who to give it to.[6] FRSO Member K, who was listening to the conversation, said "nice" and     said "wow." FRSO Member K stated, "The war on terror, right here. Who is the terrorist? We are the terrorist."     laughed loudly after FRSO Member K made this comment.

---

[6]According to airline records,     wife went to Amman, Jordan on July 4, 2010.

74.     Less than an hour later, UC1 asked          , in a recorded conversation, about her

discussion with          .          said that she told          about UC1's father's story.

stated that          said "wow," and asked if it was "a lot of money."          said she told

          that she did not know. After UC1 reminded          that it was $1,000,          said that

          stated that any money sent would be helpful. According to          stated that

he loved the story that it would "be cool" even if it was just $1,000.          said that she told

          that if he could do this for UC1, she would be happy because it is "such a cool story."

UC1 asked          to "just tell me it's going to the org" (the PFLP).          said that          would

make sure it would go to the "org itself." UC1 asked          if that is really something .

can do.          said that it was.

75.     The next day, May 30, 2010, while still at the FRSO Congress, UC1 recorded a

meeting with          . UC1 told          that "it is just 1,000." According to UC1, at

approximately the same time as UC1 said this, UC1 gave          an envelope with $1,000 in

cash.  UC1 reported that          responded, "thank you, thank you." According to UC1,

          took the envelope containing the cash, put it in his pocket, hugged UC1, and said "Thank

you. This will get to the PF." The recording device did not pick up this comment because

          whispered it in UC1's ear while the crowd of attendees was chanting in the background.

76.     During the conference that day, an FRSO member read to the attendees a letter

purportedly from the PFLP to the FRSO. It read that a PFLP leader "sent a special thanks to FRSO

for their immeasurable support of him and the PFLP." The letter went on to state that the FRSO and

the PFLP share an "unbreakable bond."

26

77.    On May 31, 2010, in a recorded conversation,          asked UC1 if it would "be OK if that money was sent from our organization [the FRSO]."          stated that "we've given substantial material aid in the past [to the PFLP]."          referenced UC1's trip with other FRSO members in 2009.          stated that the money that UC1 and other members brought "got to them" even though they were turned away at the Israeli border.

## PREMISES TO BE SEARCHED

78.    I have learned that the FRSO has no office space, but instead operates out of FRSO leaders' and members' residences. As part of its investigation into individuals providing, attempting to provide and conspiring to provide material support to designated foreign terrorist organizations, the FBI is seeking evidence including: (1) the identities and locations of FRSO recruiters, members, fund-raisers, recruits, national-officers, former members and supporters; (2) the means by which recruits were recruited to join the FRSO; (3) the means by which members of FRSO were recruited to travel to foreign countries in order to provide material support to foreign terrorist organizations; (4) the means by which members of the FRSO have provided, attempted to provide and conspired to provide material support from the United States to designated foreign terrorist organizations; (5) the means by which the FRSO is funded nationally; (6) the means by which the FRSO as an organization provides, attempts to provide and conspires to provide material support to designated foreign terrorist organizations; and (7) the names of organizations and the members within those organizations that are used by the FRSO or its members as a platform for diverting funds to support FRSO goals such as providing, attempting to provide or conspiring to provide material support to a foreign terrorist organization.

27

79.    Based upon my background, experience and training as an FBI Special Agent, I know that in general, criminals engaging in illicit activities often attempt to conceal their activities from others in order to avoid being caught. I also know that criminals engaging in illicit activities often conceal their activities and/or evidence, fruits and instrumentalities of their crimes at their residences and in garages. I also know that persons involved in criminal activities such as providing, attempting to provide and conspiring to provide material support to foreign terrorist organizations often utilize residences and garages as places where they maintain materials related to their recruitment, indoctrination, training, targets, associates, financing, sympathizers, supporters, propaganda, logistics, operations, travel and other matters related to their criminal activities. Based on facts obtained during this investigation, my training and experience and conversations with other law enforcement agents, I am also aware that documents, photographs, videos and other items memorializing material support to foreign terrorist organizations, are frequently maintained for long periods of time, often for years, by individuals who have provided, attempted to provide or conspired to provide material support to foreign terrorist organizations. I believe that evidence of these crimes can be found at the following seven locations (the "SUBJECT PREMISES").

**Residence and detached garage at**
**, Chicago, Illinois 60647.**

80.                     reside at                     , Chicago, Illinois 64607. The building at this address is a two story single family home with white painted siding. The front of the house is mostly obscured by several large trees. When facing the house, the second story window on the left appears to have a window air conditioning unit. Several steps lead up to a front

28

porch with round white columns. The numbers          are affixed to the house near the front door on

the side facing                  Avenue.

   81.   As set forth above, there is probable cause to believe that                  are

part of a continuing conspiracy to provide material support to terrorist organization. As set forth in

the affidavit,                  are involved in organized efforts to raise money and send money

to support the PFLP, a designated foreign terrorist organization. UC1 learned during the course of

the investigation that                  is a Chicago FRSO unit leader and is married to another

FRSO member,          UC1 visited their home and recorded conversations on four occasions

between July 13, 2009 and May 27, 2010. During at least three of the visits, UC1 saw items such

as t-shirts, coasters, necklaces, bags and notebooks with FARC and PFLP insignia written on them.

          informed UC1 that she sold the items and that some of the proceeds of the sale went to the

August 2009 delegation to Palestine.                  were also at          home during the

July 13, 2009 visit, which is discussed in paragraph 54 above. During that meeting, UC1 discussed

the upcoming August 2009 visit to Palestine and the cash that the delegates would bring over.

   82.   A search of                  residence is likely to lead to the discovery of,

among other things as set forth in Attachment B, information about

associates, including the identities, email addresses, bank accounts and locations of the conspiracy's

international and U.S.-based recruiters, recruits, members, fundraisers, and facilitators;          and

          personal finances, and the finances of www.revolutionarylemonaidstand.com, as they

relate to its proceeds which were directed to fund the 2009 Palestine delegation. On May 27, 2010,

when UC1 arrived at          home,          was working on her home computer and told UC1 that

she was just finishing up her unit report for the FRSO Congress, which was occurring that weekend.

While UC1 was present,                             to review and provide commentary on her unit

report.                        while discussing the unit report, mentioned FRSO Member I leading

the 2010 delegation to Palestine.

### Jessica Sundin's Residence and detached garage at                  ,
### Minneapolis, Minnesota 55407.

83.    Sundin resides at                        Minneapolis, Minnesota 55407. The

building located at this address is a two story, single family residence with a front porch and a

detached garage.

84.    As set forth above, there is probable cause to believe that Jessica Sundin is part of a

continuing conspiracy to provide material support to two foreign terrorist organizations. As set forth

in the affidavit, Sundin is involved in organized efforts to raise money and send money to support

the PFLP, a designated foreign terrorist organization. Further, as set forth in the affidavit, Sundin

has provided support to the FARC in the past, maintains contact with the FARC, and has engaged

in foreign travel to meet with the FARC and offer them support. There is also probable cause that

Sundin remains in contact with recruiters, other members of the FRSO, and the recruits themselves.

There is probable cause that Sundin maintains contact with numerous individuals in the FRSO who

are responsible for setting national policy, collecting funds on behalf of the organization, and who

are decision-makers for the organization. There is also probable cause that Sundin remains in contact

with individuals who have provided, attempted to provide and conspired to provide, material support

to designated foreign terrorist organizations, including individuals and members of FRSO who have

traveled to Palestine and Colombia and then returned to the United States.

30

85.     A search of Sundin's residence is likely to lead to the discovery of, among other things, information about Sundin's associates, including the identities and locations of the conspiracy's international and U.S.-based recruiters, recruits, members, fundraisers, and facilitators; Sundin's travel history and travel plans; and Sundin's personal finances. During the course of this investigation, UC1 has observed Sundin collect monthly FRSO dues from other FRSO members. Additionally, UC1 has heard Sundin explain in the past that she kept FRSO records on her computer. In July 2009, while at Sundin's house, Sundin showed UC1 and UC2 portions of a video depicting Sundin's trip to FARC camps in 2000. The video showed Sundin with, among others, the now-deceased FARC leader Raul Reyes. In the video, Reyes stated that the FARC was looking for more friends and money to help with their struggle. Sundin explained to UC1 and UC2 that Sundin had several hours of raw video from the trip with the FARC, and that she edited it down to a single video. The video also depicted armed members of the FARC inside a FARC camp. Sundin also told UC1 and UC2 that Sundin had a photo album with photos of the trip, but that Sundin did not know where in her home the album was located.

86.     A search may also be able to provide evidence of the identities of the persons with whom Sundin met, those who provided her with instruction on behalf of the FARC, as well as evidence of statements made by FARC members to Sundin. Finally, a search may reveal evidence corroborating Sundin's use of the email addresses and telephone numbers referenced herein. During this investigation, UC1 has been sent or was forwarded a number of emails from Sundin, or that include Sundin in the email chain. These emails have addressed fundraising to support the 2009 trip to Palestine - ultimately to provide material support to the PFLP - among other subjects. Such items may include documents, photographs and videos (in physical or electronic form), souvenirs, war

31

relics, notebooks, journals, maps, cellular telephones, and/or computer equipment and other evidence as set forth in Attachment B.

### Residence and Detached Garage at
, **Minneapolis, Minnesota 55407.**

87.         residence and detached garage is located at                in Minneapolis, Minnesota 55407. The building is a two story, single family residence with a front porch, detached garage, and fence yard.

88.     As set forth above, there is probable cause to believe that      is part of a continuing conspiracy to provide material support to two designated foreign terrorist organizations. As set forth in the affidavit,      is involved in recruiting individuals to join FRSO with the intent of advocating the overthrow of the United States' government. In addition, as set forth throughout the affidavit,

    is involved in organized efforts to raise and send money to Palestine in order to support the PFLP, a designated foreign terrorist organization. Further, as set forth in the affidavit,      has provided support to the FARC, a designated foreign terrorist organization, in the past, maintains contact with the FARC, and has engaged in foreign travel to meet with the FARC, and offer them support. There is also probable cause that     recruits for and remains in contact with recruiters and other members of the FRSO, and the recruits themselves. There is probable cause that maintains contact with numerous individuals in the FRSO who are responsible for setting national policy, collecting funds on behalf of the organization, and who are decision-makers for the organization. There is also probable cause that      remains in contact with individuals who have provided, attempted to provide and conspired to provide material support to designated foreign

32

terrorist organizations, including individuals who have traveled to Palestine and Colombia and then returned to the United States.

89.     A search of        residence and garage are likely to lead to the discovery of, among other things, information about         associates, including the identities and locations of the conspiracy's international and U.S.-based recruiters, recruits, members, fundraisers, and facilitators;        travel history and travel plans; and        personal finances. In May and June 2010, UC1 was part of FRSO meetings at        residence during which        handed out internal FRSO documents and participated in discussions regarding whether members of the AWC could be suitable for recruitment into the FRSO. Aby told UC1 in a recorded conversation on August 5, 2010, that in 2006,        traveled to Colombia and met with a clandestine member of the FARC.        also told UC1 that        had cash from other Americans with whom she traveled in Colombia. Because        has traveled to Colombia, she may also have in her possession evidence corroborating her presence and activities in Colombia, or those of her co-conspirators. A search may also be able to provide evidence of the identities of the persons in Colombia with whom        met, those who provided her with instruction on behalf of the FARC, as well as evidence of statements made by FARC members to        Finally, a search may reveal evidence corroborating        use of the email addresses and telephone numbers referenced herein.  Such items may include documents, photographs and videos (in physical or electronic form), souvenirs, war relics, notebooks, journals, maps, cellular telephones, and/or computer equipment and other evidence as set forth in Attachment B.

90.     Based on UC1's observations,        garage is detached from her residence.  The garage is accessible from an alley in the rear of her house. The garage has an overhead garage door and is marked with the number

33

**Residence at**
**Minneapolis, Minnesota 55403.**

91.        resides at                          , Minneapolis, Minnesota

55403. The building located at this address is a multi-unit apartment complex.        resides in a

two bedroom apartment on the second floor of the building.

92.        As set forth above, there is probable cause to believe that        is part of a continuing

conspiracy to provide material support to multiple foreign terrorist organizations and a conspiracy

to advocate the overthrow of the United States' government. As set forth in the affidavit,        is

involved in recruiting individuals to join FRSO with the intent of advocating the overthrow of the

United States' government. In addition, as set forth throughout the affidavit,        is involved in

organized efforts to raise and send money to Palestine in order to support the PFLP, a designated

foreign terrorist organization. In 2004,        traveled to Palestine in an effort to personally deliver

funds to provide material support to the PFLP. In August 2010, while inside        residence that

is the subject of this search warrant,        showed UC1 a notebook detailing        2004 trip to

Palestine, during which trip        told UC1 that she stayed with PFLP members in Palestine, met

with a member of the PFLP's Central Committee, and met with individuals that        described as

"fighters." There is probable cause that        remains in contact with recruiters and other members

of the FRSO, and the recruits themselves. There is probable cause that        maintains contact with

numerous individuals in the FRSO who are responsible for setting national policy, collecting funds

on behalf of the organization, and who are decision-makers for the organization. There is also

probable cause that        remains in contact with individuals who have provided, attempted to

provide and conspired to provide material to designated foreign terrorist organizations, including

individuals who have traveled to Palestine and Colombia and then returned to the United States.

34

93.     A search of          residence is likely to lead to the discovery of, among other things,

information about          associates, including the identities and locations of the conspiracy's

international and U.S.-based recruiters, recruits, members, fundraisers, and facilitators;

travel history and travel plans; and          personal finances. A search may also be able to provide

evidence of the identities of the persons with whom          met, those who provided her with

instruction on behalf of the PFLP, as well as evidence of statements made by PFLP members to

          During the same visit to          apartment in August 2010,          pointed out to UC1 file

cabinets in the closet of          bedroom in which          explained she kept her papers. Finally,

a search may reveal evidence corroborating          use of the email addresses and telephone

numbers referenced herein. Such items may include documents, photographs and videos (in physical

or electronic form), souvenirs, war relics, notebooks, journals, maps, cellular telephones, and/or

computer equipment and other evidence as set forth in Attachment B.

                    **Residence at                                              Minneapolis,**
          **Minnesota 55408.**

94.          resides at                                                         , in Minneapolis,

Minnesota 55408. The building located at this address is a two story duplex with a front and rear

porch.          resides on the second floor.

95.     On September 18, 2009, UC1 and UC2 and visited          at her home at

          , in Minneapolis.          showed UC1 and UC2 pictures of a trip she took to the West

Bank and Gaza in 2002 with          and another person. As they were looking at the

pictures,          narrated where each one was taken and answered questions regarding the individuals

in the pictures. Some pictures were of          with members of the Women's Committee.

Other pictures showed          at a wedding that involved the family of a high ranking member of the

35

PFLP.        stated that everyone was chanting at the wedding.        stated that her favorite was

"like the PFLP, our marriage will last and lead to victory."        stated that        arranged

for her to attend the wedding.

    96.    As set forth above, there is probable cause to believe that        is part of a

continuing conspiracy to provide material support to multiple foreign terrorist organizations and a

conspiracy to advocate the overthrow of the United States' government. As set forth in the affidavit,

        is intimately involved in recruiting individuals to join FRSO with the intent of advocating the

overthrow of the United States' government. In addition, as set forth throughout the affidavit,

is involved in organized efforts to raise money and send money to Palestine in order to support the

PFLP, a designated foreign terrorist organization. Further, as set forth in the affidavit,        has

provided support to the PFLP in the past, maintains contact with the PFLP and PFLP supporters in

the United States, and has engaged in foreign travel to meet with the PFLP and offered them support.

There is also probable cause that        remains in contact with recruiters and other members of the

FRSO, and the recruits themselves. There is probable cause that        maintains contact with

numerous individuals in the FRSO who are responsible for setting national policy, collecting funds

on behalf of the organization, and who are decision-makers for the organization. There is also

probable cause that        remains in contact with individuals who have provided, attempted to

provide and conspired to provide material to designated foreign terrorist organizations, including

individuals who have traveled to Palestine and Colombia and then returned to the United States.

    97.    A search of        residence is likely to lead to the discovery of, among other things,

information about        FRSO associates, including the identities and locations of the conspiracy's

international and U.S.-based recruiters, recruits, members, fundraisers, and facilitators;        travel

history and travel plans; and        personal finances.

36

98.    A search may also be able to provide evidence of the identities of the persons in the PFLP with whom        met, both in foreign countries as well as the United States, those who provided her with instruction on behalf of the PFLP, both in the United States and in foreign countries, as well as evidence of statements made by PFLP members to        A search may also yield contact information and notes regarding        PFLP contacts in the United States and foreign countries,        travel history and travel plans.  Finally, a search may reveal evidence corroborating        use of the email addresses and telephone numbers referenced herein.  Such items may include documents, photographs and videos (in physical or electronic form), souvenirs, war relics, notebooks, journals, maps, cellular telephones, and/or computer equipment and other evidence as set forth in Attachment B.

99.    On August 1, 2010, UC1 visited        current residence at

in Minneapolis.  While in her living room, UC1 believes he/she saw the photo album containing the pictures described above on a bookshelf.  UC1 also noticed a silver and red laptop in the living room.  As mentioned above,        communicates with FRSO members on her email address        Also as described above,        has exchanged text messages with        regarding providing monetary donations to the PFLP.

**Michael "Mick" Hugh Kelly's Residence at**
**Minneapolis, Minnesota 55454.**

100.    As previously stated, Kelly is one of the four leaders of the FRSO, recently re-elected to the Standing Committee.  According to UC1's written report, during an FRSO meeting on February 21, 2010, Kelly commented to UC1 that he keeps all FRSO documents at his home.  Also on February 21, 2010, UC1 asked Kelly about an FRSO internal bulletin that contained an interview

37

by        of a FARC commandant. Kelly said he did not recall the bulletin but that he keeps copies of lots of thing and it was something he had electronically.

101.    Michael Kelly is part of a continuing conspiracy to provide material support to multiple foreign terrorist organizations and a conspiracy to advocate the overthrow of the United States' government. As set forth in the affidavit, Kelly is a ranking member of FRSO, and is in fact the head of FRSO's "international relations." FRSO exists to accomplish the overthrow of the United States' government. In a recorded conversation on May 30, 2010, Kelly told UC1 that FRSO had previously studied a book called "Armed Insurrection" and that FRSO put together a map of areas in Minneapolis that FRSO would need to "seize" during an insurrection. In addition, the FRSO supports designated FTOs as part of its mission.

102.    A search of Kelly's residence is likely to lead to the discovery of, among other things, information about Kelly's associates, including the identities and locations of the conspiracy's international and U.S.-based recruiters, recruits, members, fundraisers, and facilitators; Kelly's travel history and travel plans; FRSO finances, and Kelly's personal finances. In February 2010, UC1 recorded a conversation with Kelly in which UC1 asked Kelly about an internal FRSO bulletin detailing an interview of a FARC "commandant." Kelly could not remember the specific document but told UC1 that he keeps all FRSO documents at his residence. In a recorded conversation on May 2010, Kelly's wife (or common-law wife) who lives with Kelly, asked if she was to give the "wads" of cash that end up in her and Kelly's home to the FRSO dues collector, FRSO Member S. Kelly's wife showed what appeared to be a two inch stack of money wrapped in a white sheet of notebook paper when she said "wads." In addition, a search of Kelly's residence may lead to the discovery of documents related to Kelly's communication with other designated foreign terrorist organizations. I am aware based on my review of an internal FRSO document, that in January 2009, Kelly attended

a Hezbollah-sponsored conference in Beirut, Lebanon. According to UC1's report, on December

5, 2009, during a Fightback! fundraiser at FRSO Member E's home, Kelly told UC1 that he had

recently received a communiqué from Hezballah. In addition, he told UC1 that Hezbollah knew him

and vetted him and that they had directed him to use a specific hotel during a trip that Kelly took.[7]

Finally, a search may reveal evidence corroborating Kelly's use of the email addresses and telephone

numbers referenced herein. Such items may include documents, photographs and videos (in physical

or electronic form), souvenirs, war relics, notebooks, journals, maps, cellular telephones, and/or

computer equipment and other evidence as set forth in Attachment B.

103.    Phone records, postal records, and passport records show that Kelly lives at

in Minneapolis 55454.

## Anti-War Committee Office, University Technology Building, 1313 5th Street Southeast, Room 112C, Minneapolis, Minnesota 55414.

104.    The Anti-War Committee's office is located at 1315 5th Street, Southeast in

Minneapolis, Minnesota 55414. The office is located on the first floor of the University Technology

Building on the campus of the University of Minnesota and is approximately 300 square feet.

105.    On February 2, 2010, UC1 met Individual B at the AWC office, located at 1313 5th

Street Southeast. The purpose of the meeting was for Individual B to teach UC1 about AWC book

keeping. The AWC keeps two computers in the office. One is a large, windows-based computer

and the other is a smaller "mac" computer. When UC1 asked if a password was needed to access

the computers, Individual B said a password was required for the "mac" because the computer was

---

[7]I have reviewed the recorded conversation on which this report is based. I have not
independently been able to review this specific conversation because portions of the recording are
unintelligible.

39

"stolen" from                          High School, the high school where                  is
employed as a teacher.

106.    While reviewing the AWC's finances and budget with UC1, Individual B said there
are two accounts, the AWC account and the AWC Educational Fund account. Individual B said the
reason the two accounts are kept separate is for tax reasons but later said the AWC is not any form
of a "legal entity," which Individual B explained is exactly what "they" want if they are going to be
"messing around with illegal stuff."

107.    On July 30, 2009, prior to the Palestinian delegation, UC1 went to Individual B's
home to pick up money raised for the delegation. Individual B gave UC1 two checks written out
from the AWC, totaling $706.00. UC1 asked why the checks came from the AWC and not the AWC
Educational Fund. Individual B explained to UC1 that she did not want to risk AWC Educational
Fund's non-profit status because "we are sending money to a terrorist organization, basically." She
said she had a memo on how to move money from one fund to another and that it was all a big
smoke screen. Individual B stated that if AWC was "audited or looked at by the FBI, it would be in
jeopardy."

108.    On February 2, 2010, UC1 met Individual B at the Anti-War Committee office,
located at 1313 5th Street Southeast. The purpose of the meeting was for Individual B to teach UC1
about the Anti-War Committee's bookkeeping. UC1 observed that the Anti-War Committee has two
computers in the office. One is a large, windows-based computer and the other is a smaller Apple
computer.  UC1 learned from Individual B that the Anti-War Committee's and the Anti-War
Committee's Educational Fund keeps their books and financial accounting records on these
computers.

40

**Search Protocol**

109.    Based on the investigation conducted to date, it is likely that evidence will include materials in Arabic and Spanish. If a large number of foreign language materials are present, it will be impossible to translate or even identify these materials completely within a reasonable amount of time while on-site. The searching agents therefore seek the Court's authorization to seize all foreign-language materials that cannot be immediately ruled out as evidence. If it is determined once the materials are translated, that they do no constitute evidence of crimes, the government will return said materials.

## SPECIFICS REGARDING SEARCHES OF COMPUTER SYSTEMS

110.    Based upon my training and experience, and the training and experience of specially trained computer personnel whom I have consulted, searches of evidence from computers commonly require agents to download or copy information from the computers and their components, or remove most or all computer items (computer hardware, computer software, and computer-related documentation) to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following:

a.    Computer storage devices can store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it with deceptive file names. This requires searching authorities to examine all the stored data to determine whether it is included in the warrant. This sorting process can take days or weeks, depending on the volume of data stored, and it would be generally impossible to accomplish this kind of data search on site.

b.    Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer

41

hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of a computer system is an exacting scientific procedure which is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

111.    In order to fully retrieve data from a computer system, the analyst needs all storage media as well as the computer. The analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard disk drives or on external media).

112.    In addition, a computer, its storage devices, peripherals, and Internet connection interface may be instrumentalities of the crime(s), and are subject to seizure as such if they contain contraband or were used to carry out criminal activity.

## CONCLUSION

113.    Based on the above information, there is probable cause to believe that providing, attempting to provide and conspiring to provide material support to a Foreign Terrorist Organization, in violation of 18 U.S.C. § 2339B; have been committed, and that evidence relating to this criminal conduct, as further described in Attachment B, will be found in the residence of: (a) the residence of                                                                              Chicago, Illinois; (b) the residence of Jessica Rae Sundin, located at                         Minneapolis, Minnesota; (c) the residence and detached garage of

42

Minneapolis, Minnesota; (d) the residence of                          , located at

                , Minneapolis, Minnesota; (e) the residence of          .                    located at

                          .          , Minneapolis, Minnesota; and (f) the residence of Michael

Hugh Kelly, located at                                    Minneapolis, Minnesota; (g) the office

of the Anti-War Committee, as further described in Attachment A.

    114.    I therefore respectfully request that this Court issue a search warrant for: (a) the

residence of                                    located at                              . Chicago,

Illinois; (b) the residence of Jessica Rae Sundin, located at                        , Minneapolis,

Minnesota; (c) the residence and detached garage of                        located at

        . Minneapolis, Minnesota; (d) the residence of                        , located at

                    Minneapolis, Minnesota; (e) the residence of

        located at                          .          Minneapolis, Minnesota; (f) the residence

of Michael Hugh Kelly, located at                                    Minneapolis, Minnesota;

and (g) the office of the Anti-War Committee, 112C, 1313 5th Street SE, Minneapolis, Minnesota,

as further described in Attachment A, authorizing the seizure of the items described in Attachment

B.

    FURTHER YOUR AFFIANT SAYETH NOT.

                                        John P. Thomas
                                        Special Agent, FBI

Subscribed and sworn to before me this 23rd day of September, 2010.

The Honorable Susan R. Nelson
United States Magistrate Judge